104 N.J. Super. 367 (1969)
250 A.2d 57
ST. PAUL FIRE AND MARINE INSURANCE COMPANY, A MINNESOTA CORPORATION AUTHORIZED TO TRANSACT BUSINESS IN NEW JERSEY, PLAINTIFF,
v.
NEW JERSEY BANK AND TRUST COMPANY, A BANKING CORPORATION OF THE STATE OF NEW JERSEY DEFENDANT AND THIRD-PARTY PLAINTIFF,
v.
CHARLES W. ACKERMAN, INC., A NEW JERSEY CORPORATION; ASSOCIATED ENGINEERS INC., A NEW JERSEY CORPORATION, CHARLES W. ACKERMAN AND CAROLYN P. ACKERMAN, THIRD-PARTY DEFENDANTS.
Superior Court of New Jersey, Law Division.
Decided January 31, 1969.
*368 Mr. Bernard L. Belsky for plaintiff, St. Paul Fire and Marine Insurance Company (Messrs. Cole, Berman & Garth, attorneys).
*369 Mr. Allan A. Maki for defendant New Jersey Bank and Trust Company (Messrs. Corbin & Maki, attorneys).
Mr. Sheldon Schachter for third-party defendants (Messrs. Kleinberg, Moroney, Masterson & Schachter, attorneys).
MOUNTAIN, J.S.C.
This is a third-party action seeking indemnification under a contract of guaranty. The third-party plaintiff, New Jersey Bank and Trust Company (bank), lent money to Charles W. Ackerman, Inc. and to its affiliate, Associated Engineers, Inc. The loans were made to supply funds for certain subcontracting work to be done in connection with a construction project in New York. They were secured by the assignment to the bank of monies to be earned by one or both of the borrowing corporations for work done on the construction project. Additionally, further security was forthcoming in the form of the individual guaranties of the third-party defendants, Charles W. Ackerman and Carolyn P. Ackerman. The principal debtor, in accordance with the loan agreement, deposited the proceeds received from the construction work with the bank. Eventually the borrowing corporations became insolvent and were unable to meet their obligations either to the Bank or to their materialmen. The bank thereupon applied to the indebtedness owing to it a part of the funds which had been received from the construction project.
In the first-party action plaintiff, as subrogee, having paid the materialmen, recovered from the bank the monies which the bank had applied to the debt. This recovery was had in accordance with the New York Lien Law, McKinney's Consol. Laws, c. 33, § 70 et seq. which provides, in relevant part, that a subcontractor's obligations to its materialmen on a particular project must be satisfied before the proceeds from such project may be applied to obligations owing other creditors, unless the latter, or the subcontractor itself, has filed a notice of lending as provided in the statute. The bank failed to file such a notice, and as a result the court determined *370 that its application of funds to the payment of its own debt was improper and must yield to the claim of plaintiff, which had been subrogated to the rights of the materialmen. The bank is now seeking to make itself whole by recovery against the guarantors.
One of the several defenses raised by the guarantors is that had the bank filed a notice of lending as required by the New York Lien Law, it would have been entitled to apply the proceeds from the construction project in the manner it did, and the obligation it is now seeking to satisfy against the sureties would not exist. In other words, the guarantors urge that failure of the creditor to protect the security it had received from the principal debtor, by filing the notice of lending in the manner prescribed by the New York statute, brings the guarantors within the favor of the well recognized rule of the law of suretyship that where a creditor releases or negligently fails to protect security put in his possession or under his control by the principal debtor, the obligation of the surety will be extinguished to the extent of the value of the security so released or left unprotected. In my opinion this position is well taken.
The rule that the release of security by the creditor will be held to exonerate the surety to the extent of the value of the security so released is clearly recognized in this State. Van Hoesen v. Gelfen, 103 N.J. Eq. 234, 238 (Ch. 1928) affirmed 110 N.J. Eq. 69 (E. & A. 1931). Although no New Jersey case appears to have passed upon the precise question as to whether a failure on the part of the creditor to protect security by appropiate filing, recording, the giving of notification or the like affords the surety the same relief, the great weight of authority elsewhere supports this position. Sullivan v. State, 59 Ark. 47, 26 S.W. 194 (Sup. Ct. 1894)  failure to file mortgage; Mulvihill v. First National Bank, 80 Colo. 72, 249 P. 504 (Sup. Ct. 1926)  failure to record pledge of stock on books of corporation; Redlon v. Heath, 59 Kan. 255, 52 P. 862 (Sup. Ct. 1898)  failure to record mortgage; Rose v. Homsey, 347 Mass. 259, 197 N.E.2d *371 603 (Sup. Jud. Ct. 1964)  failure to record mortgage (dictum); Nebraska State Bank v. May, 117 Neb. 262, 220 N.W. 276 (Sup. Ct. 1928) failure to file chattel mortgage; Bennett v. Taylor, 43 Tex. Civ. App. 30, 93 S.W. 704 (Civ. App. 1906)  failure to file cattle mortgage; First National Bank v. Kittle, 69 W. Va. 171, 71 S.E. 109, 37 L.R.A.N.S. 699 (Sup. Ct. 1911)  failure to notify account debtor of assignment of accounts receivable. In each case the failure of the creditor to protect the security in the manner indicated resulted in a decision releasing the surety to the extent of the value of the security so lost. This application of the general rule, as indeed the rule itself, stems from the desire of the courts to protect the surety's right of subrogation to the extent that this can be done without unfairly affecting the rights of the creditor.
It should also be noticed that courts have been most ready to invoke the rule where the necessary recording or filing is available to the creditor but not to the surety.
"In situations where the creditor alone can take the action necessary for preservation of the security, he will be required to do so. Where he neglects to record a mortgage or transfer, or gives no notice to the obligor on a chose in action of its assignment, the surety will be discharged to the extent of his loss." 10 Williston on Contracts (3rd ed.), 749-50.
Under the New York Lien Law, § 73(3), the bank had the right to file a notice of lending. It would appear that third-party defendants had no right to do so.
The bank argues that even if the court finds that ordinarily a creditor has a duty to protect security in the manner outlined above, such duty should not be imposed here because it was waived by the express terms of the contract of guaranty. In relevant part the contract entered into by the parties reads as follows:
"Guarantor consents that, without notice to or further assent by Guarantor * * * any collateral * * * may from time to time, in whole or in part, be exchanged, sold or surrendered by Bank, as it may *372 deem advisable * * * all without impairing, affecting or releasing the liability of the Guarantor hereunder."
This language includes no exculpatory provision exonerating the bank from the legally implied consequences of its failure to file. Furthermore, a contract of suretyship is, at least in general, strictly construed in favor of the surety. Boorstein v. Miller, 124 N.J. Eq. 526, 530 (Ch. 1938). Lastly, this contract of guaranty is in the form of a lengthy document in fine print, obviously prepared by the bank's attorneys. Such an instrument, like a policy of insurance, documents used in consumer credit sales and certain other forms of agreement in common use, will be most strictly construed against the party which has prepared and offered the particular instrument for execution.
In view of what has been determined, it becomes unnecessary to consider the other arguments presented by third-party defendants. There will be judgment in their favor on the third-party complaint, but without costs.