The BANK OF NEW JERSEY, a Banking
Corporation of the State of
New Jersey

v.

Aaron HEINE, Appellant.

No. 71-1768.

United States Court of Appeals,
Third Circuit.

Argued June 22, 1972.

Decided July 20, 1972.

Michael H. Egnal, Egnal & Egnal, Philadelphia, Pa., for appellant.

David A. Kasen, Farr, Brandt, Haughey & Penberthy, Haddonfield, N. J., for appellee.

Before SEITZ, Chief Judge, and ADAMS * and JAMES ROSEN, Circuit Judges.

OPINION OF THE COURT

SEITZ, Chief Judge.

Defendant appeals from an order of the district court granting plaintiff a summary monetary judgment.

Aaron Heine ("the defendant") entered into a "General Unconditional Guarantee" with plaintiff Camden Trust Company ("the Bank").[1] At the time of signing defendant was principal shareholder and president of Ranier's Dairies, Inc. ("the Dairy"). The guarantee secured repayment of a loan thereafter negotiated between the Bank and the Dairy. Essentially, it provided that, in the event the Dairy defaulted with regard to any provision of the loan agreement, defendant personally would cure the default by appropriate performance or payment.

Defendant limited his guarantee to $120,000 and the Bank executed a loan to the Dairy in that amount. The loan was evidenced by a five-year promissory note maturing May 19, 1969. It was secured by collateral consisting of: (a) a

---

* Judge Adams recused himself in this case.

1. By amendment of its charter, effective December 1, 1969, Camden Trust Company changed its name to The Bank of New Jersey.

first mortgage on real property appraised at $129,500; (b) a perfected security interest in personal property valued at $272,072; and (c) a fire insurance policy covering, to a limited extent, both the mortgaged realty and the secured personalty. Thus, the total value of the collateral as of the date of the loan approximated $401,572.

The Dairy kept current with its installments until four months prior to maturity of the note when payments ceased. The unpaid balance at this point was $72,050 plus interest. Evaluation of the collateral indicated that accrued delinquent property taxes, accumulated disrepair to the premises, and a partial fire loss had depreciated the total value to approximately $10,000. Foreclosure would not have resulted in a satisfaction of the obligation outstanding on the Dairy's note. Consequently, the Bank commenced this diversity action against defendant to realize on his guarantee.

Plaintiff's motion for summary judgment was granted on the basis of the guarantee and undisputed evidence of the Dairy's default under the loan. Cf. Superior Finance Corp. v. John A. McCrane Motors, Inc., 116 N.J.L. 435, 184 A. 828, 828–829 (Ct.App. 1936). Defendant now maintains that the district court erred in view of his allegations which, if taken as true, indicated the existence of a factual issue concerning the Bank's negligence in preserving the collateral. Defendant relies on the rule of surety law that a creditor must exercise reasonable diligence to preserve collateral exclusively within the creditor's control. See Restat. of the Law of Security, § 132. He stresses that prior to maturity of the note only the Bank, by means of its right of foreclosure, could enforce the Dairy's obligation to preserve the secured assets. The Bank having failed to do so, defendant argues that an issue of negligence is presented under controlling New Jersey law which precludes the grant of summary judgment.

■ We have been presented with no New Jersey precedent establishing that a creditor, with or without exclusive control over collateral of the debtor, has a common law duty to preserve that collateral for the benefit of one who has guaranteed payment. Indeed, the New Jersey decisions appear to adopt the contrary rule of law that, unless the guarantee agreement provides otherwise, the guarantor assumes liability in all events upon default of the principal debtor. See Nation Wide, Inc. v. Scullin, 256 F. Supp. 929, 932–933 (D.N.J. 1966), aff'd, 377 F.2d 554 (3d Cir. 1967); cf. Pfeiffer v. Crossley, 91 N.J.L. 433, 103 A. 1000, 1001 (1918). Defendant points to St. Paul Fire & Marine Ins. Co. v. New Jersey Bk. & Trust Co., 104 N.J.Super. 367, 250 A.2d 57, 58–59 (1969). However, in view of the unreported opinion of the Appellate Division reversing the Superior Court decision with regard to the third party complaint, we cannot consider the Superior Court's opinion determinative of New Jersey law on the issue of a creditor's duty to ensure preservation of the debtor's collateral for the benefit of the guarantor. See St. Paul Fire & Marine Ins. Co. v. New Jersey Bk. & Trust Co., No. A–2024–68 (App. Div., filed May 18, 1971), cert. denied, 59 N.J. 265, 281 A.2d 527 (1971).

■ Even if we assume that the rule of law espoused by defendant prevails in New Jersey, we do not think that the facts here justify its implementation. The Bank never assumed active dominion over the secured property. Compare United States Rubber Co. v. Champs Tires, Inc., 73 N.J. Super. 364, 180 A.2d 145, 150 (1962). Rather, its participation was restricted to holding the documents representing its security interest in the collateral. We recognize defendant's contention that the right of the Bank to foreclose constituted the only means available, prior to maturity of the note, to enforce the Dairy's obligation under the loan agreement to preserve the collateral. However, we do not think that, as holder of a security interest, the Bank was bound to proceed against

the Dairy rather than rely on defendant's guarantee. See Pfeiffer v. Crossley, 103 A. at 1000–1001. We realize that upon payment of the guarantee defendant, as subrogee of the Bank's rights against the Dairy, logically would turn to the collateral. But, we do not think that an affirmative duty to preserve the collateral arises on the part of the Bank solely on the basis of this possibility. Such a duty could be justified only in recognition of defendant's foreseeable reliance on the collateral. Yet, defendant himself acknowledged his lack of reliance thereon when, as part of the guarantee, he agreed to remain "bound to the full extent" of his $120,000 commitment regardless of "the surrender, exchange or release in whole or in part of any collateral held by the Bank as security or indemnity . . . ., without notice . . . or further consent . . . .."

We agree with the district court that, under the facts of this case, the Bank was not under a legal duty to preserve the collateral.

The order of the district court will be affirmed.

Powell, District Judge, dissented and filed opinion.