**FIREMAN'S FUND INSURANCE COMPANY**

v.

**JOSEPH J. BIAFORE, INC., et al., Appellants.**

No. 75–1335.

United States Court of Appeals, Third Circuit.

Argued Sept. 29, 1975.

Decided Nov. 24, 1975.

---

Henry B. Fitzpatrick, Jr., Philadelphia, Pa., for appellants; Liebert, Short, Fitzpatrick & Lavin, Philadelphia, Pa., of counsel.

Paul J. Donnelly, Philadelphia, Pa., for appellee.

Before HASTIE, VAN DUSEN and HUNTER, Circuit Judges.

OPINION OF THE COURT

VAN DUSEN, Circuit Judge.

This action is based on a May 19, 1965, General Indemnity Agreement entered into between the plaintiff-appellee, Fireman's Fund Insurance Company (Fireman's), and Bethlehem Concrete Corporation, as well as the defendants-appellants, Joseph and Helen Biafore, President and Secretary-Treasurer, respectively, of the corporate defendants-appellants, Joseph J. Biafore, Inc. and Bidi, Inc. Plaintiff executed certain performance, and labor and material, bonds as surety for Bethlehem Concrete Corporation, principal, in three construction contracts at the request of defendants and Bethlehem Concrete. The above agreement of May 19, 1965, indemnified plaintiff against all liability, loss, costs, damages, fees of attorneys and other expenses it might incur in consequence of the execution of said bonds.

Subsequent to entering into the agreement, plaintiff learned that Bethlehem Concrete was financially unsound. Plaintiff then set up reserves in the amount of $25,000 and, pursuant to the Indemnity Agreement, directed defendants to deposit a like sum. Defendants did not comply. Thereafter, on August 1, 1966, Bethlehem Concrete executed an assignment of certain accounts receivable and certain assets to plaintiff.

On August 9, 1966, plaintiff filed financing statements with the Secretary of the Commonwealth of Pennsylvania and the Recorder of Deeds of Northampton County. Thereafter, tax liens were filed against Bethlehem Concrete by the Commonwealth and by the Federal Government. Upon the filing of the federal tax lien, Bethlehem Concrete ceased performance of its contracts. Pursuant to its obligation under the Indemnity Agreement, defendants completed work contracted by Bethlehem Concrete under the above construction contracts.

On July 27, 1967, Bethlehem Concrete was adjudicated a bankrupt. At the bankruptcy proceedings, the referee entered an order invalidating plaintiff's security interest in the accounts receivable and equipment of Bethlehem Concrete by reason of its failure to perfect such security interest by properly filing a financing statement with the Prothonotary of Northampton County, rather than the Recorder of Deeds, as required by 12A P.S. § 9–401(1)(c). This order was affirmed by the district court, *In the Matter of Bethlehem Concrete Corporation,* 306 F.Supp. 1047 (E.D.Pa.1969).

As a result of the failure of Bethlehem Concrete to perform its contracts and make payment for labor and materials, Fireman's paid claims in the amount of $45,868.70. Plaintiff commenced this diversity action against defendants to recover on the Indemnity Agreement in March 1973.

Fireman's motion for summary judgment was granted by the district court on November 1, 1974. The Memorandum and Order were silent as to the amount of damages, including interest, to be awarded plaintiff. See *Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.,* 385 F.Supp. 616 (E.D.Pa.1974).[1] On February 5, 1975, the district court entered an order decreeing that plaintiff shall recover from defendants the sum of $60,839.97, consisting of $41,938.31 as principal and $18,901.66 as interest. Notice of appeal was filed with the district court on February 27, 1975. Thereafter plaintiff moved this court to dismiss the appeal.

## I.

■ Initially plaintiff contends that its motion to dismiss the appeal must be granted because the February 27, 1975, notice of appeal did not constitute a timely challenge to the November 1, 1974, district court order,[2] which plaintiff contends was a final order under 28 U.S.C. § 1291. The above-mentioned order contained this language:

" . . . IT IS ORDERED that the plaintiff's motion for summary judgment is GRANTED with leave to counsel to submit such further order as may be required."

Because we have concluded that the November 1, 1974, order was not a final order under 28 U.S.C. § 1291 and that the district court order of February 5, 1975,[3] was a final, appealable order, we will deny the motion to dismiss the appeal.

Plaintiff contends that because a contract cause of action is the basis of the suit and only the computation of interest at 6% was involved, the calculation of the damages was only a matter of mathematical computation, citing 9 Moore's Federal Practice ¶¶ 110.06–110.15 and cases such as *Gillespie v. United States Steel Corp.,* 379 U.S. 148, 152, 85 S.Ct. 308, 13 L.Ed.2d 199 (1964), and *Pioche Mines Consolidated, Inc. v. Fidelity-Philadelphia Trust Co.,* 191 F.2d 399 (9th Cir. 1951). On the other hand, defendants rely on cases such as *Cobbledick v. United States,* 309 U.S. 323, 60 S.Ct. 540, 84 L.Ed. 783 (1940); *Catlin v. United States,* 324 U.S. 229, 65 S.Ct. 631, 89 L.Ed. 911 (1945), and *City of Louisa v.*

---

1. This Memorandum explains the factual background of this appeal in greater detail.

2. This order was filed November 4, 1974.

3. Document No. 33 in Civil No. 73–479 (E.D. Pa., filed February 6, 1975).

*Levi,* 140 F.2d 512, 514 (6th Cir. 1944). The record shows that after entry of the November 1, 1974, judgment order, plaintiff filed a motion to enter judgment,[4] and such motion was opposed by defendants, who filed an answer and memorandum[5] regarding the amount of interest to which plaintiff was entitled. It was only after the submission of a reply[6] by plaintiff-appellee to defendants-appellants' memorandum that the district court entered the February 5, 1975, order determining that plaintiff shall recover a total of $60,839.97, consisting of $41,938.31 as principal and $18,901.66 as interest. See *Russell v. Barnes Foundation,* 136 F.2d 654 (3d Cir. 1943); *Western Geophysical Company of America v. Bolt Associates, Inc.,* 463 F.2d 101, 102–03 (2d Cir. 1972); 6 Moore's Federal Practice (2d Ed.) ¶ 56.20[4] at 2762–65.[7] In the *Russell* case, this court said at page 655:

" . . . the order appealed from, although it determines the liability of the defendant to the plaintiff, will not become a final adjudication of the controversy between them until the damages to which the plaintiff is entitled have been assessed."

From the foregoing it is clear that the November 1, 1974, order did not and could not have disposed of the entire controversy without at least a subsequent agreement by counsel as to the amount of interest payable.[8]

## II.

Defendants' principal contention on the merits is that the plaintiff's failure to perfect its security interest in the accounts receivable of Bethlehem Concrete precludes the entry of summary judgment in its favor and requires the reduction of their liability under the Indemnity Agreement by such amount. Section 132 of the Restatement of Law of Security (1941), which has been adopted by the courts of Pennsylvania, is the basis for their contention. The section provides as follows:

"Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor (a) surrenders or releases the security, or (b) wilfully or negligently harms it, or (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action."

Plaintiff, on the other hand, argues that the language of the Indemnity Agreement creates an unconditional guarantee and removes this case from the purview of § 132 of the Restatement.

A similar issue was considered by a Pennsylvania appellate court in *Continental Leasing Corp. v. Lebo,* 217 Pa.Super. 356, 272 A.2d 193 (1970). In that case a contract was entered into between a financing company and a supplier of restaurant equipment to guarantee payment for the leasing of such equipment

---

**4.** Document No. 30 in Civil No. 73–479 (E.D. Pa., filed December 9, 1974).

**5.** Document No. 31 in Civil No. 73–479 (E.D. Pa., filed December 13, 1974).

**6.** Document No. 32 in Civil No. 73–479 (E.D. Pa., filed February 6, 1975).

**7.** Moore uses this language at pp. 2764–65 of Vol. 6:

"Since, for example, the following interlocutory orders adjudicating liability, but with the amount of damages yet to be determined, do not fall within any statutory category allowing an interlocutory appeal *as of right,* they are non-appealable except by permission under 28 U.S.C. § 1292(b): an order

adjudicating defendant's liability to plaintiff under a contract . . . . Hence unless the interlocutory adjudication of liability is made appealable by statute no appeal will lie."

See also last sentence of F.R.Civ.P. 56(c).

**8.** Although no hearing was held, a hearing was requested by counsel for defendants in a letter of November 14, 1974, stating: " . . . I strenuously oppose the inclusion of any interest as part of a judgment against my clients in this case and if the Court is considering doing so I respectfully request permission to be heard on that subject." See Exhibit A to answer of defendants to motion to dismiss.

to a third party. The court found the guarantee agreement unconditional in nature, and as such, the failure of the financing company to perfect a security interest in collateral taken for its loan to the principal debtor did not release the guarantors from their obligations. Judge Montgomery used this language in stating the holding of the case as follows, at 197 of 272 A.2d:

"We . . . agree with the conclusion . . . that an unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform. . . .

"Therefore, we hold that the present situation is not one that falls within Restatement of the Law of Security, § 132, which was relied on by the lower court; and that the allowance of $3,300 to Universal for the lost goods was error."

■ The *Continental Leasing* decision is instructive as to those factors we must review in determining whether the guaranty agreement in the instant case is conditional or unconditional—the terms of the guaranty contract and the circumstances surrounding the transaction which induced the entering into of a guaranty arrangement.[9] Turning to the pertinent language of the agreement in question, we find in paragraph 10:

"10. *The liability of the Indemnitors hereunder shall not be affected by* the failure of the Principal to sign any such bond nor *by any claim that other indemnity or security was to have been obtained, nor by the release of any indemnity, or the return or exchange of any collateral that may have been obtained;* and if any party signing this instrument is not bound for any reason, this obligation shall

still be binding upon each and every other party." (Emphasis ours.)

and in paragraph 15:

"15. *We agree that our obligation hereunder shall be continuous;* provided, however, that any one of us may give the Company not less than thirty days written notice by registered mail of his desire to terminate this agreement but any such notice of termination shall not operate to modify, bar, discharge, limit, affect or impair our liability hereunder upon or by reason of any such bond executed prior to the termination of such thirty days." (Emphasis ours.)

We are in agreement with the district court that this language clearly evinces a pledge by defendants to perform absolutely and without limitation in case of default by Bethlehem Concrete. Furthermore, the failure of plaintiff to perfect a security interest in the accounts receivable does not affect defendants' obligations under the Agreement. The district court correctly described the effect of the Agreement:

"The plaintiff could have returned or exchanged any collateral that may have been obtained, without any alteration, or change in the defendants' clear duty to indemnify, and it does not follow that plaintiff's failure to perfect a security interest in collateral lessens the unconditional contractual duty undertaken by the defendants. Not only was plaintiff free from any obligation to take collateral initially, but the contract manifestly provided that plaintiff's treatment of such collateral, if taken, would not alter or mitigate defendants' duty."

*Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.,* 385 F.Supp. 616, 619 (E.D.Pa.1974).

■ Further, we find that the circumstances surrounding the transaction which gave rise to the indemnity ar-

9. In reviewing these factors, the court in *Continental Leasing,* text *supra,* relied upon two other decisions, *Joe Heaston Tractor & Implement Company v. Securities Acceptance Corp.,* 243 F.2d 196 (10th Cir. 1957), and *Nation Wide, Inc. v. Scullin,* 256 F.Supp. 929 (D.N.J. 1966), aff'd, 377 F.2d 554 (3d Cir. 1967).

rangement demonstrate an absolute liability on the part of defendants in the event of default by Bethlehem Concrete. Here an indemnity agreement was executed as an inducement to plaintiff to act as surety for the performance of various construction projects. The parties did not enter into an agreement providing that Fireman's would take security from the principal debtor. Defendants could have taken an assignment of accounts receivable from Bethlehem Concrete and could have perfected their own security interest. They could even have taken an assignment of the accounts receivable after plaintiff took its assignment, and could have then perfected their own security interest.

These circumstances parallel those of *Continental Leasing.* The fact that a financing company sought to enforce its rights under a guarantee contract in that case and that one in the business of writing surety bonds seeks to do so under an indemnity agreement in the present action is inconsequential. In both instances their participation in the overall transaction was premised on the tender of guarantees; the taking of security interests in collateral was secondary, and as revealed by the terms of the agreements and the circumstances of the transactions, had no effect on the obligations of the guarantors.[10]

This court has held that a creditor who is party to an unconditional guaranty contract and who additionally holds a security interest, is not under an affirmative duty to preserve the collateral unless the guarantor relies on the collateral. *Bank of New Jersey v. Heine,* 464 F.2d 1161 (3d Cir.1972). Given the unconditional nature of the Indemnity Agreement in question and the circum-

stance that plaintiffs took no action in obtaining collateral and perfecting an interest therein, there is an absence of any element of reliance on the part of defendants.

Defendants contend that plaintiff had a duty to perfect its security interest in the accounts receivable since they did not have an opportunity to take such action. In this regard, defendants rely on *Girard Trust Bank v. O'Neill,* 219 Pa. Super. 363, 281 A.2d 670 (1971). In that case defendants entered into a contract of suretyship in favor of plaintiff bank for all liabilities "contracted or acquired by (their family corporation)." When the principal debtor went into bankruptcy, plaintiff bank took actual possession of the principal's accounts receivables. Subsequently plaintiff wrote off a substantial portion of these accounts as being uncollectible and then, asserting the surety agreements, sued defendants. The court determined that plaintiff had a duty to preserve the surety interest it held in the accounts receivables and that the obligation of the sureties should be reduced to the extent that they were injured.

We find *Girard* inapplicable to the instant case since plaintiff did not receive actual control over the accounts receivable and defendants had an ample opportunity to protect their interest in such collateral.[11]

In concluding the discussion of this contention of defendants, we note the following language recently used by the Supreme Court of New Mexico in a situation where contract language similar to paragraph 10 (see page 174 above) was involved and the creditor negligently failed to perfect a security interest in collateral:

---

10. But *cf. Putney Credit Union v. King,* 130 Vt. 86, 286 A.2d 282 (1971), relied on by defendants, wherein a credit union sued the co-maker of a loan who signed as co-maker on the condition that additional security would be provided.

11. Defendants had entered judgment against Bethlehem Concrete between August 24, 1966, and September 20, 1966. See affidavit of Ed-

ward V. Redding attached to plaintiff's motion for summary judgment. Document 25 in Civil No. 73–479 (E.D.Pa., filed July 8, 1974). They could have issued attachments against the debtors of Bethlehem Concrete, and thereby obtained liens on the debts due Bethlehem. Under 12A Purdon's Statutes § 9–301, these liens would have taken precedence over the unperfected security interest held by plaintiff.

"From the documents, we observe that the Bank was not, as a prerequisite to the Guarantors' liability, obliged to take any security, although it had a right to do so. No provision of the guaranties requires the Bank to perfect security taken or otherwise deal with it in any particular way. The Guarantors waive their rights to subrogation, the very right they now claim was impaired, and waive and release any claims to the security and 'any benefit of, and any right to participate in any security now or hereafter held by Bank.' The Bank has the right to 'waive and release' the security at any time without the waiver or release affecting the Guarantors' obligation to pay. We find nothing inherently unreasonable in the terms of the guaranty agreement.

"Though we do not go as far as some courts, an examination of the language of the guaranties requires us to hold the Guarantors liable for the amount owed to the Bank. As the court said in *Etelson v. Suburban Trust Company*, 263 Md. 376, 283 A.2d 408, 410 (Ct.App.1971):

> It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity.

Where a guarantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain of the failure of the guarantee to perfect the security interest therein in the first instance."

*American Bank of Commerce v. Covolo, et al., etc.*, 540 P.2d 1294 (Sup.Ct. of New Mexico) (footnotes omitted).

In light of our analysis, we hold that plaintiff's failure to perfect a security interest in the accounts receivable is not one that falls within the Restatement of the Law of Security, § 132, and does not relieve defendants of their obligations under the Indemnity Agreement.

### III.

■ The only contention specifically covered by counsel for defendants during the oral argument of this case which is not discussed above is the argument that defendants suffered losses due to the negligence of plaintiff in failing to pursue collection of accounts receivable and other assets incident to the contract between Bethlehem Concrete and Belmont Contracting Company,[12] and that such negligent failure precludes the entry of summary judgment because, at the least, there are issues of material fact concerning this contention. See II at pages 14–17 of Brief for Appellants and II at pages 20–24 of Brief for Appellee.

Between August 18, 1966, and September 20, 1966, judgments were entered against Bethlehem Concrete by the defendants in the aggregate amount of approximately $21,756.00. Bethlehem Concrete failed to complete the concrete work under the applicable subcontract in the fall of 1966,[13] and Biafore, Inc. agreed to complete, and did complete, the work pursuant to § 5 of the General Indemnity Agreement.[14] On October 17, 1966, Fireman's wrote a letter to Belmont Contracting Company claiming subrogation rights on its behalf (99a–100a). At that time, Fireman's was faced with the prospect of paying claims

---

**12.** This contract involved concrete construction at Freedom High School, as described under "Secondly" by the District Court in *Fireman's Fund Insurance Co. v. Joseph J. Biafore, Inc.*, 385 F.Supp. 616, 617 (E.D.Pa.1974), and the district court's reasons for rejecting this contention are stated at 620–21 of 385 F.Supp.

**13.** Work by Bethlehem Concrete stopped in mid-October 1966 after filing of federal tax liens, and Bethlehem Concrete was declared to be in default.

**14.** See Answer (Document 15 in Civil No. 73–479, E.D.Pa.) to Request 15 of Plaintiff's Second Request for Admissions (Document 14).

made under its labor and material bond with Bethlehem Concrete as principal (see Plaintiff's Pre-Trial Memorandum at 22a). On January 4, 1967, Fireman's received the sum of $15,000.00 from Belmont Contracting Company for work under this subcontract. Thereafter, Fireman's paid labor and material claims in the sum of $14,659.15 (22a & 25a). On January 27, 1967, a Petition in Bankruptcy was filed against Bethlehem Concrete.

Defendants urge that plaintiff assumed responsibility for the completion of the Belmont contract upon Bethlehem Concrete's default, hired defendant Biafore, Inc. to finish the job, conducted all of its business dealings with Belmont and set up an account instructing Belmont to make payment to that account and no other source. Defendants further claim that they dealt solely with plaintiff and had no arrangements with Belmont. These facts, if successfully established, it is claimed, constitute a defense and preclude a summary judgment in plaintiff's favor.

However, the record does not support such alleged facts. Pages 48 and 49 of Mr. Ruch's deposition (Document 28 in Civil No. 73–479, E.D.Pa.) make clear that the amount due by Belmont was in dispute and Mr. Biafore testified at pages 29–30 of his deposition (Document 24 in above Civil No. 73–479) that he had no records to support the amount which he claimed was due by Belmont. See also Answer to Request No. 22 of Plaintiff's Second Request for Admissions. At page 25 of Mr. Biafore's deposition, he conceded that the President of Belmont had offered him six or seven thousand dollars for a settlement, showing that defendants did take some action to pursue their rights against Belmont.

We conclude that, under the facts in this record, defendants had just as good an opportunity to secure payment from Belmont as plaintiff.[15] After receiving the $15,000.00 from Belmont on January 4, 1967, plaintiff had received more than enough money to pay its losses[16] and had no subrogation rights against Belmont with respect to the Freedom High School Project.

■ Also, we are not persuaded by defendants' contention that plaintiff's subrogation rights as surety do not extend to them as indemnitors. Generally an indemnitor who has fulfilled its obligation to a surety pursuant to an indemnity agreement is subrogated to all rights of a surety. *Dannerbeck v. Palmer,* 502 F.2d 686, 691–92 (9th Cir. 1974). In completing this project the defendants were acting as indemnitors, rather than as agents of plaintiff.

For the foregoing reasons,[17] the motion to dismiss the appeal will be denied, and the district court's final order filed February 6, 1975, will be affirmed.

---

**15.** Joseph Biafore was an experienced businessman. Defendants were represented by able counsel after July 1966.

**16.** Plaintiff received an overage of $340.85 from Belmont and credited that amount against the total of the claims arising out of the other two construction projects described at 617 of 385 F.Supp.

**17.** Also, we have concluded that the district court did not err in awarding, in this contract action, interest from the date on which Fireman's made payment of each liquidated claim. See *Palmgreen v. Palmer's Garage,* 383 Pa. 105, 117 A.2d 721, 722–23 (1955); *Oxford Mfg., Inc. v. Cliff House B. Co.,* 224 Pa.Super. 387, 307 A.2d 343 (1973).

All other contentions of defendants have been considered and are rejected.