701 P.2d 1095 (1985)
The CONTINENTAL BANK & TRUST CO., a corporation, Plaintiff and Respondent,
v.
UTAH SECURITY MORTGAGE, INC., a corporation, F.A. Badger, Adrienne Badger, John N. Busk, Patricia C. Busk, H. Mervin Wallace, Virginia S. Wallace, Robert M. Wallace, and Carolyn M. Wallace, Defendants and Appellants.
Nos. 19086, 19087.
Supreme Court of Utah.
June 6, 1985.
*1096 Adrienne Badger, pro se, James R. Brown, Salt Lake City, for defendants and appellants.
Randall H. Mackey, Albert J. Colton, Salt Lake City, for plaintiff and respondent.
DURHAM, Justice:
The respondent, Continental Bank & Trust Company ("Continental"), brought this action to enforce a guaranty agreement between the respondent and the individual appellants. The agreement guaranteed promissory notes from Utah Security Mortgage, Inc. ("Utah Mortgage") to Continental. The trial court granted Continental's motion for summary judgment on the theory that the appellants had expressly consented in the guaranty agreements to waive their defenses based on impairment of collateral. That judgment is before us now on appeal.[1] We affirm.
In seeking reversal of the judgment, the guarantors argue that they were released from liability under the guaranties, first, because Continental unjustifiably impaired the collateral which secured the notes, and second, because Continental failed to observe the standards of commercial reasonableness required of secured parties.
Necessary to our discussion of these arguments are the following facts: The guaranty agreement guarantees the unpaid balances on three promissory notes executed by F. Alonzo Badger on behalf of Utah Mortgage. These promissory notes were part of a line-of-credit arrangement between Utah Mortgage and Continental. Utah Mortgage used the funds loaned by Continental pursuant to this line of credit to finance loans from Utah Mortgage to third-party borrowers for purchases of real property. These loans were secured by trust deeds, which Utah Mortgage then assigned to Continental Bank as collateral on the line-of-credit loans. Utah Mortgage would in turn repay the line-of-credit loans by selling the trust deeds in the secondary market to either the Utah Housing Finance Agency, the Federal National Mortgage Association, or other entities in the business of purchasing trust deeds.
In accordance with the line-of-credit arrangement described above, the three unpaid promissory notes at issue in this case were secured by the assignment of four *1097 trust deeds. In addition, Continental required the execution of the guaranty agreement as an additional condition to making the loans reflected in these three notes.
Continental failed to record and perfect its security interest in the four trust deeds, because to do so would have complicated the subsequent sale of the trust deeds in the secondary market.[2] Utah Mortgage sold them in due course in the secondary market. Under the line-of-credit arrangement, the proceeds from those sales were required to be transferred directly from the purchasers of the trust deeds to Continental, but in this instance the proceeds went to Utah Mortgage. Badger subsequently invested these proceeds in a company known as Bonneville Thrift and Loan Co. ("Bonneville Thrift"). When Continental Bank learned of this diversion of the funds, it agreed to take Bonneville Thrift stock owned by Utah Mortgage and Badger as additional collateral for the original loans.
Meanwhile, Bonneville Thrift had been notified by the Commissioner of Financial Institutions ("the Commissioner") that its capital was impaired, and accordingly, the Commissioner took possession of Bonneville Thrift. Counsel for the guarantors had sent a letter to Continental's counsel requesting that Continental sell the shares of Bonneville Thrift that it was holding and apply the proceeds from the sale toward the unpaid balances on the promissory notes. Continental Bank gave Utah Mortgage and Badger notice of its intent to exercise its right as a secured party to sell the Bonneville Thrift stock, but no sale was held. The Bonneville Thrift stock subsequently became and is now worthless. Therefore, neither the stock nor the funds from the sale of the four trust deeds are available to satisfy the underlying debt, and Continental sought recovery against the guarantors in this action.
The guarantors argue that Continental Bank's failure to perfect its security interest in the trust deeds and its subsequent failure to sell the Bonneville Thrift stock impaired the collateral and resulted in a discharge of their liability pursuant to U.C.A., 1953, § 70A-3-606(1)(b) (1980). That section, however, also provides that guarantors may consent to impairment of collateral, thus waiving a defense based thereon.
(1) The holder discharges any party to the instrument to the extent that without such party's consent the holder
... .
(b) unjustifiably impairs any collateral for the instrument given by or on behalf of the party or any person against whom he has a right of recourse.
Id. (emphasis added). The legislature adopted this section from section 3-606 of the Uniform Commercial Code. Official Comment No. 2 of section 3-606 further explains the concept of waiver:
2. Consent may be given in advance, and is commonly incorporated in the instrument; or it may be given afterward. It requires no consideration, and operates as a waiver of the consenting party's right to claim his own discharge.

U.C.C. § 3-606 comment 2 (1978) (emphasis added).
Incorporated in the guaranty agreement signed by each of the guarantors in this action is an explicit consent to impairment. The provision states:
[Continental Bank] shall not be required to proceed first against [Utah Mortgage] or any other person, firm or corporation or against any collateral security held by it before resorting to the Guarantor[s] for payment; and the liability of the Guarantor[s] shall not be affected, released or exonerated by release or surrender of any security held for the payment of any of the debts hereinbefore mentioned... .
(Emphasis added.) The first clause in this provision permitted Continental to proceed against the guarantors without selling the *1098 Bonneville stock, and the second clause permitted Continental to release or surrender its interest in the trust deeds, which was the practical result of the sale of the deeds in the secondary market before any recording of that interest.
The guarantors contend that this provision is ineffective to constitute a waiver. They assert that "where there is more than one contract, i.e., a guaranty and a loan agreement, the rights and obligations of the parties are to be determined from all of the documents... ." There is, however, no language in the loan agreements that contradicts the conclusion that the guarantors waived the impairment defense in the guaranty agreements. They rely upon some language in the promissory notes and upon the course of dealing between Continental and Utah Mortgage which suggests that the promissory notes were intended to be secured. This argument is irrelevant, however, because the contract in question in this case is the guaranty agreements between the guarantors and Continental and not a contract between Utah Mortgage and Continental. We agree with the conclusion of the trial court that the language in the guaranty agreements is unambiguous and susceptible of only one interpretation: the guarantors explicitly waived any defense based on impairment of collateral.
Although this is the first time this Court has ruled on the application of section 70A-3-606's waiver provision, our conclusion is not unique. Article 3 of the Uniform Commercial Code has been adopted by a majority of the states, and our present interpretation of section 3-606 is in accord with most of the rulings obtained in those jurisdictions that have construed it. For example, the New Mexico Supreme Court enforced a guaranty agreement that allowed the plaintiff bank to "waive and release any such security" held for payment without affecting the grantor's obligation to pay. American Bank of Commerce v. Covolo, 88 N.M. 405, 540 P.2d 1294 (1975). The guarantors in Covolo, similar to those in the present case, raised a defense of impairment because the bank had failed to perfect a security interest. The court concluded that the guarantors had consented, pursuant to the language set forth above, to the impairment in the guaranty agreement, thereby waiving their defense. The court explained:
"It would be illogical to rule that the Bank had a duty to file the financing statement and its failure to do so released the endorsers, when under the endorsement it could have released the collateral with impunity." Where a guarantor or surety expressly and unequivocally consents to a waiver or release of his rights in the collateral, he will not be heard to complain of the failure of the guarantee to perfect the security interest therein in the first instance.
Covolo, 88 N.M. at 410, 540 P.2d at 1299 (quoting Etelson v. Suburban Trust Co., 263 Md. 376, 379, 283 A.2d 408, 410 (Ct. App. 1971)) (other citations omitted).
The guarantors argue that Covolo is distinguishable from the present case because the Covolo guaranty agreement provided that the lender may "waive and release" the security, while the guaranty agreement in this case speaks of "release or surrender" of the security. The distinction is insignificant because, even if "waiver" and "surrender" are not precisely equivalent, the failure to perfect a security interest is one method of releasing collateral. Therefore, we hold that the guarantors agreed to waive any defenses based upon impairment of collateral by Continental. See Haney v. Deposit Guaranty National Bank, Miss., 362 So.2d 1250, 1252 (1978); see also Greene v. Bank of Upson, 231 Ga. 287, 287-88, 201 S.E.2d 463, 464 (1973); Reeves v. Hunnicutt, 119 Ga. App. 806, 807-08, 168 S.E.2d 663, 664 (1969).
The guarantors have cited only one case that reached a contrary result: St. Paul Fire and Marine Insurance Co. v. New Jersey Bank and Trust Co., 104 N.J. Super. 367, 250 A.2d 57 (Law Div. 1969), rev'd on other grounds, 137 N.J. Super. 294, 349 A.2d 65 (App.Div. 1971). The guarantors in Covolo also relied on St. Paul Fire, and like the New Mexico Supreme Court, we *1099 disagree with the rationale of St. Paul Fire and choose not to follow it. See Covolo, 88 N.M. at 410, 540 P.2d at 1299.
The guarantors' second argument is that, under U.C.A., 1953, § 70A-1-102(3) (1980), an unconditional guaranty cannot waive the obligation of good faith, diligence, reasonableness, and care prescribed by U.C.A., 1953, § 70A-9-207 (1980). The guarantors rely on FMA Financial Corp. v. Pro-Printers, Utah, 590 P.2d 803 (1979), to support their contention that Continental is barred from recovery in this case because it failed to undertake a sale of the Bonneville Thrift stock in a commercially reasonable manner in accordance with section 70A-9-207. They argue that once Continental gave notice of its intent to sell the stock, it had made an election of remedies. Once this election was made, the guarantors claim, Continental's failure to complete a sale and its demand for payment by the guarantors was a violation of the good faith, diligence, reasonableness, and care requirement.
The guarantors' reliance on our decision in Pro-Printers is misplaced. The issue in that case focused on the requirements of a commercially reasonable sale. Pro-Printers does not speak to the question of whether guarantors may validly waive their rights to discharge for impairment of collateral, reasonable or otherwise.
The guarantors' construction of section 70A-9-207 is also incorrect. This section is equivalent to section 9-207 of the Uniform Commercial Code; they provide in part, "A secured party must use reasonable care in the custody and preservation of collateral in his possession." U.C.A., 1953, § 70A-9-207(1) (emphasis added); U.C.C. § 9-207 (1978) (emphasis added). Official Comment No. 1 to section 9-207 states that under section 1-102(3), U.C.C. § 1-102(3) (1978); U.C.A., 1953, § 70A-1-102(3), the parties to a security agreement may determine what constitutes "reasonable care" for the purposes of their agreement, as long as the standards set are not "manifestly unreasonable." U.C.C. § 9-207 comment 1 (1978). The consent provision in the guaranty agreements before us specifically modified the section 9-207 standard, and there is nothing manifestly unreasonable about such a modification. Similar provisions with equivalent language have been challenged in other jurisdictions and have been found to be reasonable. E.g., Covolo, 88 N.M. at 409, 540 P.2d at 1298.
The guarantors raise one final argument concerning election of remedies. Because they raise this theory for the first time on appeal, we decline to treat it. See Turtle Management, Inc. v. Haggis Management, Inc., Utah, 645 P.2d 667, 672 (1982).
Having held the guaranty agreement enforceable, we affirm the summary judgment entered by the trial court. Costs are awarded to Continental.
HALL, C.J., and STEWART, HOWE and ZIMMERMAN, JJ., concur.
NOTES
[1] Adrienne Badger filed a separate, pro se notice of appeal, but the district court failed to include her name in the judgment; consequently, we have no jurisdiction over her interests.
[2] The Utah Housing Finance Agency, to which Utah Security Mortgage, Inc., sold many of its trust deeds, has issued regulations that prohibit the agency's purchase of any trust deeds that are subject to an existing assignment.