CITY OF DAYTON, APPELLANT, *v.* HILL, APPELLEE.
CITY OF DAYTON, APPELLANT, *v.* SMITH, APPELLEE.

(Nos. 69-121 and 69-122—Decided February 25, 1970.)

*Mr. Lee C. Falke,* prosecuting attorney, and *Mr. John E. Breidenbach,* for appellant.

*Messrs. Goldman, Bogin & Fox,* and *Mr. W. I. Shaman,* for appellees.

HERBERT, J.   At the outset, it should be noted that the allegation of denial of counsel (and the admission thereof for purposes of the demurrer) removes from these cases

the question of *res judicata,* decided in *State* v. *Perry* (1967), 10 Ohio St. 2d 175, 226 N. E. 2d 104. It is also clear that the offense with which appellees were charged was such that they had a right to "appear and defend in person and with counsel." Section 10, Article I of the Constitution of Ohio. Therefore, the sole question before us is whether Sections 2953.21 to 2953.24, inclusive, Revised Code, referred to as the Post Conviction Remedy Act, provide a remedy for the procedurally admitted wrong of denial of counsel in a Municipal Court prosecution for violation of a city ordinance.

In 1949, the United States Supreme Court declared that the states must provide their prisoners with some "clearly defined method by which they may raise claims of denial of federal rights." *Young* v. *Ragen* (1949), 337 U. S. 235, 239, 93 L. Ed. 1333. Following a report made in June 1953 by a Special Committee on Habeas Corpus to the Conference of Chief Justices, it was concluded that the National Conference of Commissioners on Uniform State Laws should draft a Uniform Post Conviction Procedure Act for consideration by state legislatures. This was done, and in 1955 the Conference adopted the present Uniform Act. That Act is specifically limited to persons "convicted of a felony." 9B Uniform Laws Annotated 541, *et seq.* With Illinois preceding the adoption of a Uniform Act (Ill. Rev. Statutes Chapter 38, Sections 122-1 to 122-7, inclusive), and North Carolina following Illinois (N. C. General Statutes, Sections 15-217 to 15-222, inclusive), the states began providing prisoners with methods to seek the relief mentioned in *Young* v. *Ragen, supra.* In April 1965, Nebraska adopted its postconviction law (Neb. Rev. Statutes, Chapter 29, Sections 29-3001 to 29-3004, inclusive), and Ohio followed in July of that year. A reading of the first section of these two enactments clearly shows that the Ohio section was modeled after that adopted in Nebraska. Even though neither of the two acts was directly limited to state convictions, both leave no doubt that the county prosecuting attorney's office is to participate in any hearing on such petitions.

In *Case* v. *Nebraska* (1965), 381 U. S. 336, 14 L. Ed. 2d 422, the United States Supreme Court remanded a pending appeal and ordered reconsideration of the cause by the Nebraska Supreme Court in light of that state's newly enacted postconviction law. Justices Clark and Brennan wrote concurrences to the court's *Per Curiam* opinion, in which they discussed such state enactments. Despite the absence in the Nebraska Act of a clear limitation to state convictions, the justices employed the phrases "state criminal administration," "state courts," "state prisoners," "state criminal business" and "state prosecutions." Since their observations were clearly gratuitous and designed to be informative in the subject area, and in view of the heretofore cited Uniform Act, we view the Justices' usage of such terms as highly persuasive that the entire field of postconviction procedure was mandated by the Supreme Court in *Young* v. *Ragen, supra,* and conceived by the Commissioners on Uniform State Laws in 1955, as being related only to state-prosecuted convictions. Further, since the Ohio and Nebraska Acts are almost identical in this respect, it is also logical to assume that the high court would view Ohio's act as applying solely to convictions entered as the result of state prosecution.

Ohio's Post Conviction Remedy Act, Sections 2953.21 to 2953.24, inclusive, Revised Code, provides that "any person convicted of a criminal offense or adjudged delinquent" may file a petition for postconviction relief in the court which sentenced him; that the "prosecuting attorney" of the county in which the petition is filed shall be furnished a copy thereof; that in perusing the petition the court shall include in its consideration the "indictment" in the prior cause; that the "prosecuting attorney" shall respond to the petition; and that at a hearing on the petition, the petitioner may be released from custody and brought to the hearing upon a warrant of the "Court of Common Pleas of the county where the hearing is to be held." Furthermore, the Act refers to "the warden of the penitentiary, the superintendent of a state reformatory, or other head of a state penal institution," establishes machinery for the

appointment of "counsel" and requires that such counsel's compensation be paid by the "county in which petitioner was sentenced."

The sole language in the entire Act which even suggests that it could apply to Municipal Court prosecutions for city ordinance violations is the General Assembly's use of the term "criminal offense." However, the remaining language, in both the original Act and in the 1967 amendment, clearly shows that no logical or reasonable procedure has been provided for the handling of postconviction petitions filed in a Municipal Court as the result of a conviction and sentence for violating a municipal ordinance. To give such effect to the Ohio Act would be to create chaos and uncertainty at both county and municipal levels of government as to how to process postconviction petitions filed under circumstances obviously not envisioned by the General Assembly.* It would also foster an unreasonable situation wherein an ordinance violator, who is not entitled to appointed counsel during his trial or appeal, would be entitled thereto in postconviction proceedings.

In view of the foregoing, it must be concluded that the General Assembly did not intend for Sections 2953.21 to 2953.24, inclusive, Revised Code, to apply to a conviction and sentence of the type at bar, and that as used in those sections the words "criminal offense" do not include the violation of a municipal ordinance.

The judgments of the Court of Appeals are reversed and the judgments of the Municipal Court are affirmed.

*Judgments reversed.*

TAFT, C. J., O'NEILL, SCHNEIDER, DUNCAN and CORRIGAN, JJ., concur.

MATTHIAS, J., not participating.

---

*While the question of the application of the Ohio Act to "misdemeanants" is raised in a recent article by Professor Lawrence Herman, the proposition is not there discussed. See Symposium On Post-Conviction Remedies; Foreward and Afterward, 27 Ohio State L. J. 237.