**FORD MOTOR CREDIT COMPANY**

v.

**Walter and Fredericka LOTOTSKY**

v.

**FORD MOTOR COMPANY.**

**Civ. A. No. 81–3704.**

United States District Court, E.D. Pennsylvania.

Sept. 22, 1982.

On Motion for Reconsideration Oct. 19, 1982.

John H. McKeon, Jr., Dechert Price & Rhodes, Philadelphia, Pa., for plaintiff.

Edwin P. Smith, Dubyn & Smith, Philadelphia, Pa., for defendants Lototskys.

Jeffery G. Weil, Dechert Price & Rhodes, Philadelphia, Pa., for third-party defendant Ford Motor Co.

### MEMORANDUM AND ORDER

DITTER, District Judge.

This motion for summary judgment presents essentially two questions: first, whether a guarantor can assert the defense of commercial reasonableness in the disposition of the collateral by the original creditor in an action to recover under a contract of guaranty; second, assuming such a defense is viable, whether the commercial reasona-

bleness defense can be waived under Pennsylvania law.[1]

The following facts are undisputed. The plaintiff, Ford Motor Credit Company, is engaged in the business commonly known in automotive circles as floor plan financing. On August 25, 1972, Lott Lincoln Mercury, Inc. became a participant in Ford Credit's Automotive Wholesale Plan (hereinafter the "Plan"). Under the Plan, Ford Credit routinely financed the purchase of vehicles for retail sale by Lott Lincoln. In conjunction with the financing Plan, the plaintiff sought and obtained a security interest in all financed merchandise pursuant to a wholesale security agreement. In addition to the purchase money security interest, the agreement provided that in the event of default, the plaintiff could repossess and sell the merchandise at public or private sale for the account of the dealer. The dealer would, of course, remain liable to the plaintiff for any deficiency in the sale of the proceeds. Comprehensive powers of attorney were also executed by Lott Lincoln to execute the Plan.

Presumably, to insure a readily available source of funds in the event of default by Lott Lincoln, Ford Credit demanded the execution of a "Continuing Guaranty Agreement" by the defendants, husband and wife. It appears from the record that the defendants are the principal owners of the corporate stock of Lott Lincoln. Docket No. 5, Third Party Complaint at 2.[2] The terms of the guaranty state in essence that the defendants jointly, severally, and unconditionally guaranty that Lott Lincoln "will fully, promptly and faithfully perform, pay and discharge all [its] present and future obligations to [Ford Credit] . . .". It further provides that in event of default by Lott Lincoln on those obligations, the guarantors agreed "without [Ford Credit] first having to proceed against the Dealer . . . to pay on demand all sums due and to become

due to [Ford Credit] from Dealer and all losses, costs, attorney's fees or expenses which [Ford Credit] may suffer by reason of Dealer's default." With respect to the nature of payment and availability of defenses, the agreement was equally comprehensive. It specifically provided that each guarantor "agrees to be bound by and on demand to pay any deficiency established by a sale of paper or security held with or without notice . . . and waives notice of acceptance hereof and of presentment, demand, protest, and notice of non-payment or protest as to any note or obligation signed, accepted, endorsed or assigned to you by dealer, and all exemptions, rights of dower and homestead laws and any other demands and notices required by law and we waive all set-offs and counterclaims." Moreover, the agreement provided Ford Credit with the authority to "settle, release, compound compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting the obligation of any of us hereunder."

To its owner's dismay, and most probably Ford Credit's as well, in 1979 Lott Lincoln defaulted on its obligation under the Plan. This lawsuit was instituted when the defendants refused a demand for payment under the guaranty of the amount of deficiency after the sale of Lott Lincoln's inventory by the plaintiff. At present, it is alleged in the complaint that the amount owing is $29,550.14, plus interest and attorneys' fees.

In the face of the sweeping language contained in the contract of guaranty, the defendants assert that the plaintiff failed to liquidate the vehicles to obtain the largest possible fund or satisfy the indebtedness. This claim can be essentially reduced to the assertion that the collateral was disposed of in a commercially unreasonable

---

**1.** The parties concede and the relevant choice of law principles dictate that in this diversity case Pennsylvania law is applicable. *Erie R.R. v. Tompkins,* 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188 (1938). See *Paul Revere Protective Life Ins. Co. v. Weis,* 535 F.Supp. 379, 383 n. 3

(E.D.Pa.1981), aff'd mem., Slip. Op. No. 81–2404 (3rd Cir. March 30, 1982).

**2.** Defendant, Walter Lototsky, also serves as president of the corporation.

manner.[3] The defendants argue that guarantors have the same rights to assert this defense as the principal debtor. Contrariwise, the plaintiff takes the dual position that guarantors cannot raise the defense of commercial reasonableness, and assuming the defense is viable, the defendants are precluded from asserting it by the waivers in the guaranty agreement.

At the outset, I note that neither the parties nor independent research has uncovered any Pennsylvania appellate court case which has addressed the issues presented herein. In the absence of such an authoritative pronouncement, my task is to predict how that court would rule. *Pennsylvania Glass Sand v. Caterpillar Tractor Co.,* 652 F.2d 1165, 1167 (3rd Cir.1981). Accordingly, I shall endeavor to forecast state law with an eye toward the doctrinal trends evinced by the relevant authorities. See *McKenna v. Ortho Pharmaceutical Corp.,* 622 F.2d 657, 663 (3rd Cir.), cert. denied, 449 U.S. 976, 101 S.Ct. 387, 66 L.Ed.2d 237 (1980).

Two somewhat overlapping theories have evolved to support the validity of commercial reasonableness in the disposition of collateral as a defense by guarantors. Initially, it must be understood that a guaranty is a collateral promise or undertaking by one person to answer for the payment of some debt in the case of default of another who is liable for such payment in the first instance.[4] The guarantor in effect is a voucher for the principal debtor. Correlatively, if the debtor can reduce or is not liable on the debt, the guarantor similarly should not be liable. To protect the guarantor's liability

from exceeding that of the debtor, the common law permitted guarantors to raise any defenses of the principal to the underlying contract except purely personal defenses. 10 S. Williston, Contracts 214 (3rd ed. 1967); 38 C.J.S. Guaranty § 88 (1943).[5] The nature of contract of guaranty, therefore, dictates that the debtor's defense to a payment of a deficiency based upon the creditors' negligent disposal of the collateral can be utilized by the guarantor as well.

The second theory forms the basis for the so-called impairment of collateral defense. This defense is predicated upon the guarantor's equitable right to pay original debt. By right of subrogation the guarantor then assumes all rights of the creditor in the collateral securing the underlying debt. When the original creditor impairs the value of the collateral by sale or otherwise, the guarantor's right of subrogation is impaired. To preserve the value of the right of subrogation, the creditor is said to have an equitable duty of care in the handling and preservation of the collateral. The often-cited quotation by Judge Thompson states:

> It is the established rule that a guarantor is discharged from his obligation by any act on the part of the guarantee which increases the guarantor's risk to in any manner injure his rights and remedies. This principle is so well recognized that further citation is needless.

*Fidelity Savings Bank v. Wormhoudt Lumber Co.,* 251 Iowa 1121, 1126, 104 N.W.2d 462, 466 (1960). Breach of this duty by

---

3. Because of the holding herein, it is unnecessary to address the defendants' assertion that they did not receive proper credit in the sale of the assets. This can be determined at trial as well as the validity of any agreement determining what is commercially reasonable under 13 Pa.Con.Stat.Ann. § 9501(c). Hereinafter, my references to the Uniform Commercial Code shall be to the specific Pennsylvania codification in Title 13 unless otherwise noted.

4. *Atlanta Corp. v. Ohio Valley Provision Co.,* 489 Pa. 389, 394, 414 A.2d 123, 126 (1980). See also, 3 J. Kent, Commentaries on American Law 121–22 (13th ed. 1884). The technical distinctions between the terms guaranty and surety, which are based on the type of the

secondary liability assumed, have been largely abandoned in modern analysis. See Restatement of Security, § 82, comment (8) (1941); U.C.C. § 1–201(40) (1980).

5. See also, *Provident Trust Co. v. Metropolitan Casualty Ins. Co.,* 152 F.2d 875, 880 (3rd Cir.), cert. denied 327 U.S. 789, 66 S.Ct. 810, 90 L.Ed. 1015 (1946); *American Bonding Co. of Balt. v. United States,* 233 F. 364, 369, 147 C.C.A. 300 (3rd Cir.), error dismissed, 242 U.S. 661, 37 S.Ct. 113, 61 L.Ed. 550 (1916); *Monongahela St. Ry. Co. v. Philadelphia Co.,* 350 Pa. 603, 622, 39 A.2d 909, 916 (1944); *Hancock Bank v. Orlando,* 220 Pa.Super. 1, 4, 281 A.2d 466, 468 (1971).

negligent sale, therefore, gives rise to the guarantor's independent defense of impairment of collateral.[6]

Although these defenses are firmly embedded in Pennsylvania common law, so too is the proposition that an explicit waiver precludes a guarantor from asserting them in an action to recover under the guaranty. With respect to the defenses of the debtor,[7] the general rule is that the liability of the guarantor will not exceed that of the debtor. Nevertheless, most courts recognize that the contract of guarantee is a separate undertaking, and "if the terms of the contract so state, a guarantor may assume greater liability than that of the principal." *Paul Revere Protective Life Ins. Co. v. Weis,* 535 F.Supp. 379, 386 (E.D.Pa.1981) aff'd mem., —— F.2d ——, Slip Op. No. 81–2404 (3rd Cir. March 30, 1982).[8] Thus, the debtor's defenses are waivable by the guarantor.

The common law impairment of collateral defense of the guarantor is similarly subject to the terms of the guaranty. In *Continental Leasing Corp. v. Lebo,* 217 Pa.Super. 356, 272 A.2d 193 (1970) the court stated:

> ... an unconditional guaranty is one whereby the guarantor agrees to pay or perform a contract on default of the principal without limitation. It is an absolute undertaking to pay a debt at maturity or perform an agreement if the principal does not pay or perform. The waiver provision of the contract supports this conclusion.

> Therefore, we hold that the present situation is not one that falls within Re-

statement of the Law of Security, § 132 ...

*Id.* at 363, 272 A.2d at 197. The Court of Appeals concurred in this position in *Fireman's Fund Ins. Co. v. Joseph J. Biafore, Inc.,* 526 F.2d 170 (3rd Cir.1975). There, the Court concluded that "a creditor who is a party to an unconditional guaranty contract and who additionally holds a security interest, is not under an affirmative duty to preserve the collateral unless the guarantor relies on the collateral." *Id.* at 175. In explaining the *Continental Leasing* decision, the Court noted that the relevant factors which determine the nature of the guaranty were the terms of the contract and the circumstances surrounding the transaction which induced the entering into of the guaranty arrangement. *Id.* at 174. The decisive factor for the Court was the absence of an element of reliance on the collateral by the defendant. *Id.* at 175. The tenor of these cases is that when the rights to the collateral are explicitly waived by the guarantor, there can be no reliance on the collateral as an inducement to enter into the guaranty. Thus, in the words of then District Judge Becker, "the guarantor has agreed to be absolutely liable." *United States v. Kurtz,* 525 F.Supp. 734, 745 (E.D. Pa.1981). See *Fireman's Fund Ins. Co. v. Joseph Biafore, Inc., supra,* 526 F.2d at 174; *Bank of New Jersey v. Heine,* 464 F.2d 1161, 1163 (3rd Cir.1972); *Paul Revere Protective Life Ins. Co. v. Weis, supra,* 535 F.Supp. at 385; *Girard Trust Bank v. O'Neil,* 219 Pa.Super. 363, 367, 281 A.2d 670, 671 (1971).

---

**6.** The Restatement of Security § 132 (1941) summarizes the defense as follows:

> Where the creditor has security from the principal and knows of the surety's obligation, the surety's obligation is reduced pro tanto if the creditor
> (a) surrenders or releases the security, or
> (b) wilfully or negligently harms it,
> (c) fails to take reasonable action to preserve its value at a time when the surety does not have an opportunity to take such action.

This defense has been accepted in theory in Pennsylvania common law. See *Beaver Trust Co. v. Morgan,* 259 Pa. 567, 103 A. 367 (1918); *Phoenix Brewing Co. v. Rumbarger,* 181 Pa. 251, 37 A. 340 (1869); *Sitgreaves v. Farmers' and Merchants' Bank,* 49 Pa. 359 (1865). And,

more specifically, the Third Circuit has noted that this Restatement section is part of the law of Pennsylvania. *Fireman's Fund Ins. Co. v. Joseph Biafore, Inc.,* 526 F.2d 170 (3rd Cir. 1975); See also, *Girard Trust Bank v. O'Neill,* 219 Pa.Super. 363, 365–67, 281 A.2d 670, 671– 72 (1971) (citing cases).

**7.** See supra, at n. 5 and accompanying text.

**8.** The court cited, inter alia, e.g., *Waters v. Chase,* 142 Pa. 463, 21 A. 882 (1891); *Cross v. Rosenbaum,* 7 Misc.2d 309, 161 N.Y.S.2d 337 (1957). See also, *American Trading Co. v. Fish,* 42 N.Y.2d 20, 26, 396 N.Y.S.2d 617, 619, 364 N.E.2d 1309, 1312 (1977).

Under the common law of Pennsylvania, it can be surmised that the defendants herein would be precluded from asserting any defense to the plaintiff's right of action on the debt because of the general waiver contained in the agreement.[9] The inquiry does not end here, however, because the parties apparently agree that the Pennsylvania Commercial Code controls the issue *sub judice*.[10] The foregoing overview of the common law is not merely an academic exercise, but serves to denote the changes in the law effected by the adoption of the Uniform Commercial Code. It also provides a framework for resolution of the Code's ambiguities.[11]

The Code radically departed from the strict common law view of conditional sales contracts.[12] Under this view, it is generally held that when the conditional seller exercises his right to reclaim the goods, the contract is rescinded and an action for price or any unsatisfied balance is lost. Moreover, the weight of authority holds that the buyer of property by conditional sale is not entitled to an accounting where the seller in event of default reclaims and sells the goods.[13] In order to avoid what they perceived as an inequitable forfeiture, courts and legislatures began to recognize the buyer's equitable interest in the goods and the seller's corresponding duty to secure a fair price at sale to protect their equity in the property.[14] The Code sections on secured transactions represents the codification of this equitable trend.[15]

In enacting section 9–501,[16] the drafters sought to curb the potential for overreaching in the default situation. Their comment states:

**9.** It must be noted that the defendants waived their right to rely on the principal's collateral by the following language: "[the Creditor] . . . may accept partial payments thereon or settle or release, compound compromise, collect or otherwise liquidate any obligation or security therefor in any manner and bid and purchase at any sale without affecting or impairing the obligation of any of [the guarantors] hereunder."

**10.** The division on secured transactions is the applicable subsection because the original transaction created a security interest, 13 Pa. Con.Stat.Ann. § 9102, and the Code regulates the disposition of collateral therefor. Moreover, the Court of Appeals was not presented with the argument of the Code's applicability in the foregoing cases.

**11.** The provisions of the Code dealing with suretyship have been described "puzzling" and "inconclusive" at best. Peters, Suretyship under Article 3 of the Uniform Commercial Code, 77 Yale L.J. 833, 876–79 (1968).

**12.** The conditional sale has both contractual and proprietary aspects and is often classified as a chattel mortgage. In such cases, the practice is for the buyer to be given possession of the item purchased, while the seller retains title until the price is paid. See 5 Williston on Contracts, § 734. The Code replaces the traditional conditional sales contract with a comprehensive scheme for regulation of security interests. See 13 Pa.Con.Stat.Ann. § 9102 (comments).

**13.** See 5 Williston on Contracts §§ 736, 737; 37 A.L.R. 91, 100 (1925). There was ample concern for the unscrupulous seller who might recover the property upon technical default after substantially all of the purchase price had been paid. 49 A.L.R.2d 15, 19 n. 6 (1956).

**14.** See 5 Williston on Contracts § 738; 49 A.L. R.2d 15, 20, 52 (1956); Uniform Conditional Sales Act § 17, § 19 and § 20. Although the Sales Act contains no specific provision regarding the seller's duty to secure a fair price at resale, this duty seems implicit in the requirement for public sale.

**15.** See 13 Pa.Con.Stat.Ann. §§ 9501–9507.

**16.** 13 Pa.Con.Stat.Ann. § 9501 provides in part:

(a) Rights and remedies of secured party. —When a debtor is in default under a security agreement, a secured party has the rights and remedies provided in this chapter. He may reduce his claim to judgment, foreclose or otherwise enforce the security interest by any available judicial procedure. If the collateral is documents the secured party may proceed either as to the documents or as to the goods covered thereby. A secured party in possession has the rights, remedies and duties provided in section 9207. The rights and remedies referred to in this subsection are cumulative.

(b) Rights and remedies of debtor.—After default, the debtor has the rights and remedies provided in this chapter, those provided in the security agreement and those provided in section 9207.

(c) Limitation on waiver of certain provisions.—To the extent that they gave rights to the debtor and impose duties on the secured party, the rules stated in the following provi-

In the area of rights after default our legal system has traditionally looked with suspicion on agreements designed to cut down the debtor's rights and free the secured party of his duties: no mortgage clause has ever been allowed to clog the equity of redemption. The default situation offers great scope for overreaching; the suspicious attitude of the courts has been grounded in common sense.

Subsection (3) [c herein] of this Section contains a codification of *this* long stand-

ing and deeply rooted attitude: *the specified rights of the debtor and duties of the secured party may not be waived or varied except as stated.*

13 Pa.Con.Stat.Ann. § 9501 comment 4 (emphasis added). Thus, the statute and comments unequivocally declare that as a matter of public policy a creditor's duty to use reasonable care in the custody and preservation of collateral [17] and upon default to dispose of the collateral in a commercially reasonable manner [18] is not subject to waiv-

---

sions of this title may not be waived or varied except as provided with respect to compulsory disposition of collateral (Section 9505(a) ) and with respect to redemption of collateral (section 9506) but the parties may by agreement determine the standards by which the fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable.

(1) Section 9502(b) and section 9404(b) insofar as they require accounting for surplus proceeds of collateral.

(2) Section 9504(c) and section 9505(a) which deal with disposition of collateral.

(3) Section 9505(b) which deals with acceptance of collateral as discharge of obligation.

(4) Section 9506 which deals with redemption of collateral.

(5) Section 9507(a) which deals with the liability of secured party for failure to comply with this chapter.

**17.** 13 Pa.Con.Stat.Ann. § 9207 is the codification of the payee's common law duty to preserve collateral. That section reads in part:

(a) Duty of secured party to use reasonable care.—A secured party must use reasonable care in the custody and preservation of collateral in his possession. In the case of an instrument or chattel paper reasonable care includes taking necessary steps to preserve rights against prior parties unless otherwise agreed.

(b) Rights and duties of parties.—Unless otherwise agreed, when collateral is in the possession of the secured party:

(1) reasonable expenses (including the cost of any insurance and payment of taxes or other charges) incurred in the custody, preservation, use or operation of the collateral are chargeable to the debtor and are secured by the collateral;

(2) the risk of accidental loss or damage is on the debtor to the extent of any deficiency in any effective insurance coverage;

(3) the secured party may hold as additional security any increase or profits (except money) received from the collateral, but

money so received, unless remitted to the debtor, shall be applied in reduction of the secured obligation;

(4) the secured party must keep the collateral identifiable but fungible collateral may be commingled; and

(5) the secured party may repledge the collateral upon terms which do not impair the right of the debtor to redeem it.

(c) Liability of secured party for losses.—A secured party is liable for any loss caused by his failure to meet any obligation imposed by subsections (a) and (b) but does not lose his security interest.

This section applies when the secured party takes possession of the collateral either before or after default. See *Id.* at comment 4; and must be read in *pari materia* with § 9501. See 13 Pa.Con.Stat.Ann. § 9501 comment 3. Of course, any agreement under § 9207 cannot waive or modify the rights of the debtor contrary to § 9501(c) or disclaim the duty of care established by § 9207(a). *Id.*

**18.** This duty of care is codified in 13 Pa.Con. Stat.Ann. § 9504 which states in part:

(a) Disposition of collateral and application of proceeds.—A secured party after default may sell, lease or otherwise dispose of any or all of the collateral in its then condition or following any commercially reasonable preparation or processing. Any sale of goods is subject to Division 2 (relating to sales).

(b) . . .

(c) Manner of disposition.—Disposition of the collateral may be by public or private proceedings and may be made by way of one or more contracts. Sale or other disposition may be as a unit or in parcels and at any time and place and on any terms *but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable.* Unless collateral is perishable or threatens to decline speedily in value or is of a type customarily sold on a recognized market, reasonable notification of the

er or modification by agreement. The sole remaining question is whether the drafters of the Code intended to include guarantors within this comprehensive and radical modification of the law of secured transactions which is contained in Article 9 of the Code.

The definitional section must be the cornerstone to the resolution of this issue. Section 9105 of the Code defines debtor as follows:

> The person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral, including the seller of accounts, contract rights or chattel paper. Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the division dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

13 Pa.Con.Stat.Ann. § 9105(a). The majority of jurisdictions construing this language have found that guarantors, accommodation makers, and other obligors who owe a collateral duty to pay deficiencies are debtors within the meaning of Article 9 of the Code. See *Commercial Credit Corp. v. Lane,* 466 F.Supp. 1326 (M.D.Fla.1979); *Rushton v. Shea,* 423 F.Supp. 468 (D.Del. 1976); *Clune Equipment Leasing Corp. v. Spangler,* 615 S.W.2d 106, 108 (Mo.App. 1981); *Rhoten v. United Virginia Bank,* 221 Va. 222, 269 S.E.2d 781, 785 (1981); *First National Bank of Denver v. Cillessen,* 622 P.2d 598, 600 (Colo.App.1980); *First Alabama Bank of Montgomery, N.A. v. Parsons,* 390 So.2d 640, 642–43 (Ala.Civ.App. 1980); *FMA Financial Corp. v. Pro-Printers,* 590 P.2d 803, 807 (Utah 1979); *Commercial Discount Corp. v. Bayer,* 57 Ill. App.3d 295, 14 Ill.Dec. 647, 372 N.E.2d 926, 929 (1978); *Chase Manhattan Bank N.A. v. Natarelli,* 93 Misc.2d 78, 401 N.Y.S.2d 404, 412 (1977); *Savings Bank of New Britain v. Booze,* 34 Conn.Sup. 632, 382 A.2d 226, 227 (1977); *Barnett v. Barnett Bank of Jacksonville,* 345 So.2d 804 (Fla.App.1977); *Delay First Nat. Bank & Trust v. Jacobson Appliance Co.,* 196 Neb. 398, 243 N.W.2d 745, 748 (1976); *Camden National Bank v. St. Clair,* 309 A.2d 329 (Me.1973); *T & W Ice Cream, Inc. v. Carriage Barn, Inc.,* 107 N.J.Super. 328, 258 A.2d 162, 165 (1969); *Norton v. National Bank of Commerce of Pine Bluff,* 240 Ark. 143, 398 S.W.2d 538, 540 (1966). See also, *United States v. Willis,* 593 F.2d 247, 256 n. 13 (6th Cir.1979) (not specifically deciding the issue but permitting guarantors to invoke the defense of commercial reasonableness-citing cases); *United States v. Champion Sprayer Co.,* 500 F.Supp. 708, 709 (E.D.Mich.1980); *Mack Financial Corp. v. Scott,* 100 Idaho 889, 606 P.2d 993, 998 (Idaho, 1980).[19] The few courts which have taken the contrary position are of dubious validity. See *Brinson v. Commercial Bank,* 138 Ga.App. 177, 225 S.E.2d 701 (1976) (contrary to *First Nat. Bank & Trust Co. v. Kunes,* 230 Ga. 888, 199 S.E.2d 776 (1973); *A.J. Armstrong Co. v. Janburt Embroidery Corp.,* 97 N.J.Super. 246, 234 A.2d 737 (1967) (not followed in *T*

---

time and place of any public sale or reasonable notification of the time after which any private sale or other intended disposition is to be made shall be sent by the secured party to the debtor, and except in the case of consumer goods to any other person who has a security interest in the collateral and who has duly filed a financing statement indexed in the name of the debtor in this Commonwealth or who is known by the secured party to have a security interest in the collateral. The secured party may buy at any public sale and if the collateral is of a type customarily sold in a recognized market or is of a type which is the subject of widely distributed standard price quotations he may buy at private sale.

(emphasis added). See 13 Pa.Con.Stat.Ann. § 9507.

**19.** The commentators also have advocated this position. See Sachs & Belgrad, Liability of the Guarantor of Secured Indebtedness After Default and Repossession Under the Uniform Commercial Code: A Walk on the Wild Side by the Secured Party, 5 U.Balt.L.Rev. 15, 161 (1976); Clark, Suretyship in the Uniform Commercial Code, 46 Tex.L.Rev. 453, 477–78 (1968); Barkley Clark, Inc., Law of Secured Transaction Under the Uniform Commercial Code, 114.8[7](d) at 4–63 n. 258 (1980) (opining that the *Brinson* court, supra, "totally ignores the definition of 'debtor' in § 9105(1)(d).")

& W Ice Cream, supra); New Haven Water Co. Employees Credit Union v. Burroughs, 6 Conn.Cir. 709, 313 A.2d 82 (1973) (not followed in Booze, supra).[20]

The thesis advanced by the majority viewpoint is that a guarantor is a person who owes "other performance" because he owes a conditional duty to pay upon default.[21] See First Alabama Bank of Montgomery, N.A. v. Parsons, supra, 390 So.2d at 642 (citing T & W Ice Cream, Inc. v. Carriage Barn, Inc., supra, 107 N.J.Super. at 333, 258 A.2d at 165). Other courts, perhaps recognizing difficulty in reconciling this construction with the language in the second sentence of section 9105 defining debtor,[22] have focused on the implications of failing to follow the requirements of section 9504 and reasoned that because such a failure results in release of the obligor from any deficiency after resale, section 9504 deals both with the collateral and the obligation. See Commercial Discount Corp. v. Bayer, supra, 57 Ill.App.3d at 299, 14 Ill.Dec. at 372, 372 N.E.2d at 929. Accord, First National Bank of Denver v. Cillessen, supra, 622 P.2d at 601; Rhoten v. United Virginia Bank, supra, 221 Va. 222, 269 S.E.2d at 784.

Whatever merit inheres in these respective views, ultimately the resolution of the competing arguments will focus on the underlying policies espoused by the Code. In my opinion, the rights and duties of secured parties[23] and the corresponding rights and remedies of the debtor[24] in Article Nine are so inextricably intertwined that, in the language of section 9105(a), "the context so requires" that both the principal obligor and a guarantor must be considered debtors within the meaning of these sections of the Code. This conclusion acknowledges the admonition of the Code's draftsmen that "[t]he scheme of the [Article 9] is to make distinctions, where distinctions are necessary, along functional rather than formal lines."[25]

Several compelling reasons support this conclusion. First, and foremost, as previously noted,[26] Article Nine represents a wholesale redefinition of the law dealing with rights of creditors to the collateral upon default. These rights are the essence of the security transaction and serve to distinguish the secured from the unsecured lender. As the Code comment makes clear, the legislative scheme in Article 9 sets forth the creditor's rights as well as their corresponding limitations which legislative policy requires for the protection of both defaulting debtors and other creditors.[27] The guarantor is in essence another creditor in relation to the principal obligor by virtue of his equitable right of subrogation.[28] Thus, the expansive definition of debtor in Article Nine can be seen as merely a codification of the guarantor's common law impairment of collateral defense with a public policy limitation on waiver. "In this way, Article Nine prescribes the rules relating to the

**20.** I make no comment as to the primacy of Booze vis-a-vis New Haven Water in other factual contexts.

**21.** Alternatively, it has been suggested that the guarantor is not a debtor within the meaning of the first sentence of § 9105(1)(d) when the guaranty is executed, but becomes a debtor upon default of the principal, because the conditional duty becomes absolute and the guarantor then "owes payment." Note, The Waiver of Defenses by Guarantors in Guaranty Contracts and the New Waiver Provisions of the Uniform Commercial Code, 5 Ver.L.Rev. 73, 89 (1980).

**22.** In New Haven Water Co. Employees Credit Union v. Burroughs, 6 Conn.Cir. 709, 313 A.2d 82 (1973), the court reasoned that based on this language a person who guarantees payment of a secured obligation but who does not own the collateral is not a debtor under the Code because section 9–504(3) [13 Pa.C.S.A. § 9504(c)] refers essentially to the collateral and not to the obligation.

**23.** See 13 Pa.Con.Stat.Ann. § 9207(a), § 9207(c), § 9504(c), § 9501(a).

**24.** See 13 Pa.Con.Stat.Ann. § 9501(b), § 9501(c).

**25.** 13 Pa.Con.Stat.Ann. § 9101 comment (emphasis added).

**26.** See supra, at n. 12, and accompanying text.

**27.** 13 Pa.Con.Stat.Ann. § 9501 comment 1.

**28.** See supra, at n. 6 and accompanying text.

collateral for the debt, regardless of who owns the collateral." [29] To confine the definition of debtor to the principal obligor would permit creditors to circumvent this comprehensive regulatory scheme intended by the Code by the simple expedient requiring a debtor to obtain a guarantor. Upon default the party with the most substantial interest in the collateral would be left unprotected by the Code. The result would be to encourage the very type of economic waste which the Code was designed to minimize. See *United States v. Willis, supra,* 593 F.2d at 255 (federal common law).

Moreover, if the functional analysis dictated by the Code is followed, it can be seen that the unconditional guarantor is in a very real sense the debtor. When the probability of deficiency looms after default, the guarantor is the real target of the secured party. It is simply inequitable, therefore, to permit the secured party, who fixes the amount of the guarantor's liability in the first step of the collection effort by repossession and sale, to deny in the face of this economic reality that the guarantor is in fact its debtor.[30] At that point, the guarantor is the only debtor. Furthermore, where the debtor and guarantor are in essence the same entity, as the record here discloses, it is equally unjust to allow a creditor to evade the Code duties by merely insisting on a guaranty.

From the conclusion that a guarantor is a debtor within the meaning of Article Nine, it would seem *a fortiori* that a guarantor is precluded from waiving the commercial reasonableness defense by virtue of Section 9501(c).[31] Nevertheless, various courts have taken the position that this defense is subject to waiver as under the common law. See *United States v. Kurtz, supra,* 525 F.Supp. at 746 (federal common law, disagreeing with *Chatlins,* infra, based

on the language in the guaranty); *National Acceptance Corp. of America v. Wechsler,* 489 F.Supp. 642, 648 (N.D.Ill.1980) (Illinois law); *First Nat. Park Bank v. Johnson,* 553 F.2d 599, 601–02 (9th Cir.1977) (Montana law-notice provision waivable); *Vickers v. Chrysler Credit Corp.,* 158 Ga.App. 434, 280 S.E.2d 842, 895 (1981) (agreeing with the proposition the guarantor is not a debtor under the Code), *Mutual Finance Corp. v. Politzer,* 21 Ohio St.2d 127, 256 N.E.2d 606, 611 (1970) (notice provision waivable—without discussion of definition of debtor). Other courts have not been amenable to this view and have endorsed the opposite conclusion. See *Commercial Discount Corp. v. King, supra,* 515 F.Supp. at 992 (disagreeing with *Wechsler, supra,* in interpreting Illinois law); *Commercial Credit Corp. v. Lane, supra,* 466 F.Supp. at 1332 (M.D.Fla.1979) (citing *Barnett v. Barnett Bank of Jacksonville, supra,* 345 So.2d at 806, for the proposition that the notice provisions of section 9504 are not waivable); *Delay First Nat. Bank & Trust v. Jacobson Appliance Co., supra,* 196 Neb. at 406, 243 N.W.2d at 751 (notice provisions not waivable); *First Nat. Bank of Denver v. Cillessen, supra,* 622 P.2d at 598 (notice provisions). *Alfieri v. United States,* C.A. No. 81–65 (E.D.Pa. May 12, 1982), at 5 (assuming without deciding that defense is non-waivable); *United States ex rel. Small Business Administration v. Chatlins Dept. Store, Inc., supra,* 506 F.Supp. at 112 (E.D.Pa.1980) (under federal common law unconditional guaranty in technical sense does not waive defense); *Mercantile Financial Corp. v. Miller,* 292 F.Supp. 797, 800 (E.D.Pa.1968) (implicitly recognizing guarantor right to assert defense despite argument of waiver). See also, *United States v. Willis, supra,* 593 F.2d at 256 (requirement of commercial reasonableness of sale is part of federal common law and is non-waivable). With all due respect to

---

**29.** Kripke and Felsenfled, Secured Transactions: A Practical Approach to Article 9 of the Uniform Commercial Code, 17 Rut.L.Rev. 168, 169 (1962).

**30.** See Sachs & Belgrad, supra, n. 18 at 163. In the case of insolvency of the principal, this position seems little more than a recognition of

the common law rule that a guarantor may set-off the principal's claims against the creditor when the principal is insolvent. *See Continental Group, Inc. v. Justice,* 536 F.Supp. 658, 661 (D.Del.1982) (citing cases).

**31.** See supra, at n. 16.

those courts which have adopted the former position allowing waiver, in my view the reasons heretofore advanced to support the conclusion that guarantors are debtors under section 9504 are equally apposite to the waiver issue: that is, the regulatory scheme of the Code regarding disposition of collateral after default established a policy which must include guarantors to function rationally and, more importantly, cannot be nullified by prior agreement.[32] This position is consistent with the general anti-waiver provision contained in section 1102 of the Code which proscribes disclaimers of the obligations of good faith, diligence, reasonableness and care.[33] See 13 Pa.Con.Stat.Ann. § 1102(c). In my judgment, it is the position that the Supreme Court of Pennsylvania will adopt when presented with the question.

■ In sum, I conclude that Pennsylvania would adopt the position of the majority of jurisdictions that guarantors are debtors within the meaning of Article Nine. I therefore hold that the waiver in the guaranty at issue is void as it conflicts with the anti-waiver provisions of the Code.[34] It should not be inferred from this conclusion that I am unaware that the general purpose of the guaranty is to facilitate the issuance of loans by ensuring a ready source for repayment in the event of default. I am simply skeptical that imposition of the Code duties upon default in these circumstances will result in a decline of available capital. This holding merely requires the creditor to meet the minimal burden of showing that the disposition of collateral was commercial reasonable; it does not deny recovery on the obligation. This burden can be met in the same manner as if the creditor was proceeding against the principal: by prior agreement [35], or by affidavit on motion for summary judgment.

## ON MOTION FOR RECONSIDERATION

Plaintiff, Ford Motor Credit Company now moves for reconsideration of this court's order of September 23, 1982, denying its motion for summary judgment in this action to recover a deficiency on a contract of guaranty. In its memorandum, plaintiff states that this court noted that "no higher court had determined the relevant issues here and that this [c]ourt would have to predict what an appellate court would do." Plaintiff's Memorandum in Support at 1. Essentially, plaintiff argues that the Court of Appeals summary affirmance of *United States v. Kurtz,* 525 F.Supp. 734 (E.D.Pa.1981), *aff'd mem.,* 688 F.2d 827 (3rd Cir.1982), provides the relevant prediction and is dispositive in the case sub judice. Defendant's argument misconceives the nature of federal jurisdiction in this case. Because this case arises under the court's diversity jurisdiction and Pennsylvania law provides the applicable substantive princi-

---

**32.** See supra, at nn. 27–30 and accompanying text.

**33.** I have no reservation in finding that the duty of care created in sections 9207 and 9504 of the Code runs in favor of guarantors regardless of their classification because the obligations of good faith and fair dealing underlie the entire Code scheme. See Mooney, Old Kontract Principles and Karl's New Kode: An Essay on the Jurisprudence of Our New Commercial Law, 11 Vil.L.Rev. 213, 222 (1966). Moreover, a growing body of law recognizes that Section 1102(c) and its functional counterparts preclude any attempt to abrogate the fundamental rules of liability set forth in the Code. Cf., *Cumis Ins. Soc. v. Girard Bank,* 522 F.Supp. 414, 423 (E.D. Pa.1981) (holding that the rules of liability for forged signatures contained in Article 4 cannot be varied by agreement).

**34.** At first glance, it may seem anomalous that a surety under section 3606 of the Code can consent to impairment of collateral while upon default a surety is precluded from waiving the defense of commercial reasonableness in the disposition of collateral. But section 3606 is applicable only to the pre-default stage, while section 9504 specifically governs the disposition of any collateral remaining to secure the debt. Moreover, the more persuasive reasoning finds that the 3606 defenses are available only to signatories on the negotiable instrument. Noble, The Surety and Art. 3: A New Identity for an Old Friend, 19 Dug.L.Rev. 245, 262–63 (1981).

**35.** See infra, at n. 3 (citing 13 Pa.Cons.Stat. Ann. § 9501(c)).

ples,[1] my task is to predict how the Pennsylvania Supreme Court would decide the issues; not how *any* appellate court would rule, as the plaintiff contends. See *Pennsylvania Glass Sand v. Caterpillar Tractor Co.*, 652 F.2d 1165, 1167 (3rd Cir.1981). *Kurtz*, supra, is not controlling in this prediction since that court viewed California law as providing the applicable federal rule of decision on the basis of the court's decision in *United States v. Kimbell Foods, Inc.*, 440 U.S. 715, 99 S.Ct. 1448, 59 L.Ed.2d 711 (1979).[2] *Kurtz*, supra, 525 F.Supp. at 740 n. 11 and 744. Moreover, in holding that a guarantor may waive the protections afforded under the California Commercial Code, the court relied on many other cases involving the Small Business Administration as the plaintiff. *Id.* at 745–46. To the extent the court cited relevant authority in this circuit construing private guarantee agreements under state law, I noted that the Court of Appeals was not presented with the arguments of the applicability of the Uniform Commercial Code in those cases.[3]

An alternative basis for the *Kurtz* decision also detracts from its value as a controlling decision in this case. Judge Becker found that even if the guarantor had not waived the commercial reasonableness defense, there was no genuine issue of material fact as to the reasonableness of the Small Business Administration's disposition of the collateral. *Kurtz*, supra, 525 F.Supp. at 747–48. *Kurtz* was affirmed without opinion. Thus I am unable to determine the basis for the Court of Appeals' affirmance of the decision. Accordingly, the affirmance of *Kurtz* does not serve as an accurate prediction of Pennsylvania law and I am not bound by that decision. Therefore, I adhere to my views stated in my prior opinion and refuse plaintiff's motion for reconsideration.

1. See *Ford Motor Credit Co. v. Lototsky*, 996 F.Supp. 1000 at n. 11 (1982, E.D.Pa.)

2. *Kurtz*, of course, involved a Small Business Administration (S.B.A.) loan agreement with the United States as the plaintiff. Thus, federal common law provided the applicable substantive law as gleaned from the particular state law.

3. See *Ford Motor Credit Co. v. Lototsky*, supra, at 1000 n. 10. Also, the court noted that the trend in the California authorities was to permit waiver. *Kurtz*, supra, 525 F.Supp. at 746.