**USX CREDIT CORPORATION,**
**Plaintiff–Appellee,**

v.

**Harold W. LICHTERMAN and Seymour Kessler, Defendants–Appellants.**

**Nos. 88–1161 and 88–1196.**

United States Court of Appeals,
Seventh Circuit.

Argued Nov. 10, 1988.

Decided June 2, 1989.

---

David A. Axelrod, Feiwell, Galper & Lasky, Ltd., Daniel C. Meenan, Jr., Georgia A. Kolettis, Chicago, Ill., for defendants-appellants.

George W. Gessler, Gessler, Flynn, Laswell, Hughes & Socol, Ltd., William P. Jones, Chicago, Ill., for plaintiff-appellee.

Before COFFEY, RIPPLE, and KANNE, Circuit Judges.

KANNE, Circuit Judge.

Harold W. Lichterman and Seymour Kessler, as two shareholders in Titan Marine, Inc., signed promissory notes as evidence of a debt owed by Titan to USX Credit Corporation.[1] When Titan defaulted upon the debt, USX sued Lichterman and Kessler. The district court entered summary judgment in favor of USX. We affirm.

## I. BACKGROUND

In January of 1982, Titan Marine, Inc., a Subchapter S corporation, borrowed over $2 million from USX to purchase an oil vessel. Titan signed a promissory note as evidence of its debt and USX took a security interest in the vessel as collateral. In addition, USX required each of Titan's nine shareholders to execute documents entitled "Direct Loan Obligations." As two of the nine shareholders in Titan, Lichterman and Kessler each signed a Direct Loan Obligation consistent with the percentage of their shareholder interest.

Each Direct Loan Obligation provided that in "consideration of giving by [USX] ... credit to Titan Marine ... and of the benefits to accrue to the undersigned arising out of such transaction, ... the undersigned hereby ... promises on demand (1) to pay [USX] when due [a percentage] of all amounts to be paid by [Titan] under all notes now or at any time hereafter entered into between [USX] and [Titan]." The agreement also stated that "this instrument is a primary obligation of the undersigned as if the Note and any of the Other Agreements had been contracted and was due and owing personally by the undersigned." Furthermore, the Direct Loan Obligation was made "continuing, absolute, unconditional and irrevocable." Finally, the shareholders expressly waived any requirement that USX proceed against Titan or the security, or pursue any other available remedy.

Until early 1983, Titan satisfied the monthly payments owed upon the promissory note. When Titan subsequently fell behind in its payments, Titan and USX entered into negotiations to restructure the loan. In December of 1983, Titan and USX executed a restructured promissory note ("1983 note"). The 1983 note required each of Titan's shareholders to execute a "Confirmatory Direct Loan Obligation." By signing the new agreement, each shareholder "confirmed and reaffirmed" the

---

1. USX Credit Corporation is a successor in name and interest to U.S. Steel Credit Corpora-tion to whom the debt originally was owed.

terms and covenants of the original Direct Loan Obligation. All of Titan's shareholders, including Lichterman and Kessler, signed a Confirmatory Direct Loan Obligation pursuant to the 1983 note.

In late 1984, Titan again fell behind in its payments. Titan approached USX, requesting a second restructuring of the note. On January 25, 1985, Titan and USX negotiated a third note ("1985 note").[2] As with the 1983 note, USX again requested Titan's shareholders to sign binding agreements, called "Second Confirmatory Direct Loan Obligations." The terms of the 1985 note expressly stated that USX would not accept the restructuring pursuant to the 1985 note unless all of Titan's shareholders executed the agreements. Although most of the shareholders executed the agreements, Lichterman and Kessler did not.

Thereafter, Titan made a few payments. However, Titan subsequently defaulted again and USX filed this action against Titan's shareholders, including Lichterman and Kessler. The district court entered summary judgment in favor of USX.

## II. DISCUSSION

Lichterman and Kessler basically raise two issues upon appeal. First, they argue that summary judgment was improper because a question of fact existed as to whether USX had waived Lichterman and Kessler's liability. Second, they argue that summary judgment was improper because a question of fact existed as to whether USX acted in a commercially reasonable manner with respect to the collateral after Titan defaulted. We will address each of these issues separately.

### A. *Alleged Waiver of Lichterman and Kessler's Liability*

The district court entered summary judgment in favor of USX, finding that no

material factual issues existed as to Lichterman and Kessler's liability for Titan's debt owed to USX. The court found that the terms of the 1985 note required all of Titan's shareholders to execute Second Confirmatory Direct Loan Obligations before the 1985 note could take effect. Because Lichterman and Kessler, among others, failed to execute the requisite documents, the 1985 note failed to take effect as a matter of law. Consequently, the court determined the appellants' liability under the governing 1983 note and found that the appellants were primary obligors who were absolutely liable for the debt owed by Titan to USX.

Lichterman and Kessler disagree with the court's conclusions. They believe that the district court should have looked past the language of the 1985 note to determine if the note actually took effect notwithstanding the note's explicit requirements. They contend that because USX may have treated the 1985 note as if it took effect immediately after it was negotiated,[3] and because they never signed the Second Confirmatory Direct Loan Obligations, they were not bound by the terms of the 1985 note. Furthermore, they argue that the USX's actions in executing and accepting the 1985 note relieved them of their liability under the 1983 note because of they did not formally agree to the "material changes" made in the terms of their obligations upon Titan's debt. Consequently, Lichterman and Kessler conclude that they in fact generated sufficient evidence below which should have precluded the district court from entering summary judgment in favor of USX.

▮▮▮ Initially, we agree with the district court that under the plain language of the 1985 note it never took effect as a

---

**2.** The 1985 note basically made three changes in the terms of the 1983 note: (1) the amount of principal was increased; (2) the interest rate was changed from 3% over prime to a flat 12% rate; and (3) the repayment scheduled was extended.

**3.** For example, Lichterman and Kessler allege that in February, 1985, USX mailed invoices to Titan which reflected the terms of the 1985 note

instead of the terms of the 1983 note. Furthermore, USX accepted payments from Titan pursuant to those invoices. Additionally, USX's employees apparently prepared an internal document which stated, "We will sue. Don't mention 2nd restructuring." Finally, Lichterman and Kessler argue that USX's amended complaint impliedly admits the validity of the 1985 note.

matter of law. However, contrary to their assertions, the appellants remain liable for Titan's debt regardless of USX's actions. Even if USX had changed the terms of the original loan agreement significantly, which USX obviously did not propose to do when one compares the terms of the 1983 note and the proposed 1985 note, Lichterman and Kessler's liability under the Loan Obligations continued.

The original Direct Loan Obligations specifically state:

> [T]he undersigned hereby gives this instrument to [USX] and promises on demand (1) to pay [USX] when due ... all amounts to be by [Titan] *under all notes now or at any time entered into between [USX] and [Titan]* ....
>
> ....
>
> 3. The undersigned hereby assent to all of the provisions of the Note and Other Agreements and authorize Lender, at any time and from time to time *without the consent of, or notice or demand to, the undersigned, without impairing or releasing the obligations of the undersigned hereunder* and without incurring responsibility to the undersigned, to: (a) change the amount of, place, terms, time or manner of payment of amounts to be paid by Borrower under the Note and Other Agreements; (b) change any of the terms, covenants, conditions, obligations or provisions of the Note and Other Agreements; (c) renew, amend, modify, change or supplement the Note and Other Agreements;....
>
> ....
>
> ... No waiver of any of its rights hereunder, and no modification or amendment of this Instrument, shall be deemed to be made by Lender *unless the same shall be in writing* duly signed on behalf of Lender, and each such waiver (if any) shall apply only with respect to

the specific instance involved, and it shall in no way impair the rights of Lender or the obligations of the undersigned to Lender in any other respect at any other time....

> ....
>
> The obligations of the undersigned hereunder are joint and several, and are independent of the obligations of [Titan].

Direct Loan Obligation (emphasis added).

Under the agreements, including the 1983 note and the Confirmatory Direct Loan Obligations, the appellants clearly were "primary obligors." Thus, they cannot avail themselves to an argument that Titan and USX "materially altered" the terms of the obligation for which they had agreed to act only as guarantors or sureties.[4] Further, Lichterman and Kessler agreed that their obligations were absolute, continuing, and unconditional. They waived any right to notice of modification of the terms of their obligation, agreed that USX could not waive any of their obligations unless in writing, and agreed to pay to USX "all amounts to be paid by [Titan] under all notes now or at any time hereafter entered into between [USX] and [Titan]." Thus, because Lichterman and Kessler cannot point to any written waiver of their obligations under the 1983 note as required by the terms of the note, and can at best only offer extrinsic circumstantial evidence which does not affect the nature of their obligations under the plain language of the executed documents, the appellants remain liable for Titan's debts, no matter when or how incurred.[5] We therefore conclude that the district court properly entered summary judgment in favor of USX.

### B. *The Collateral*

Kessler and Lichterman also argue that the district court erroneously granted sum-

---

4. Some cases hold that a party may be bound by a contract, even though conditions precedent have not been met, if he treats the contract as binding and effective and takes some substantial action under the contract. However, given the plain language of the instruments involved and the nature of the obligations binding the appellants, those cases do not apply here.

5. Even when viewed most liberally, we do not believe the evidence offered by the appellants to prove that USX waived their liability is very persuasive. For example, the terms of the 1985 note largely mirrored the terms of the 1983 note, with the few exceptions previously noted. Thus, when the appellants argue that USX mailed notices and accepted payments which reflected the terms of the 1985 note, and alleged

mary judgment in favor of USX by finding that USX had not violated any obligation to dispose of any collateral in a commercially reasonable manner.[6] They contend that the district court's ruling is error as a matter of law because Pennsylvania law requires creditors to act in a commercially reasonable manner with respect to all dispositions of collateral and that this requirement cannot be waived. We believe that Lichterman and Kessler have misread Pennsylvania law or at least have interpreted it much too broadly.

The Pennsylvania Commercial Code governs "any transaction (regardless of form) which is intended to create a security interest...." 13 Pa. Cons. Stat. Ann. § 9102(a). The Code grants both secured parties and debtors various rights, duties, and remedies. Lichterman and Kessler, as debtors,[7] argue that they have a right to have the collateral seized by USX disposed of in a commercially reasonable manner and that this right cannot be

waived. To a limited extent, we do not disagree. Section 9503 of the Code states that "[u]nless otherwise agreed a secured party has on default the right to take possession of the collateral." 13 Pa. Cons. Stat. Ann. § 9503. Section 9504 then provides that "[a] secured party may ... dispose of any or all collateral in its then condition," *id.* § 9504(a), "but every aspect of the disposition including the method, manner, time, place and terms must be commercially reasonable," *id.* § 9504(c). Finally, the Code states that "[t]o the extent that [the provisions] give rights to the debtor and impose duties on the secured party, the rules ... may not be waived or varied...." *Id.* § 9501(c); *see also Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996 (E.D.Pa.1982).[8]

Under these statutes, USX clearly has a duty to dispose of the collateral in a "commercially reasonable manner" once it decides to dispose of it at all. However, the Code does not state under what circumstances a secured party is *required* to dis-

---

damages in its original complaint based upon the terms of the 1985 note, the appellants' contentions may be misplaced. Consequently, we doubt whether these facts would relieve a surety or a guarantor of his liability upon a debt because the primary parties made "material changes" in the original loan agreement, let alone support a waiver theory on behalf of someone who is primarily liable for the debt. However, because we base our decision upon the clear and unambiguous language and intent of the documents involved in this case, we do not need to consider the merits of the appellants' proffered evidence.

6. The district court found, and the parties agree, that Pennsylvania law governs this diversity action.

7. The protections to which Lichterman and Kessler seek to avail themselves only applies to "debtors." *See* 13 Pa.Cons.Stat.Ann. § 9501–9507. Section 9105(a) of the Code defines a "debtor" as:

The person who owes payment or other performance of the obligation secured, whether or not he owns or has rights in the collateral,.... Where the debtor and the owner of the collateral are not the same person, the term "debtor" means the owner of the collateral in any provision of the division dealing with the collateral, the obligor in any provision dealing with the obligation, and may include both where the context so requires.

*Id.* § 9105(a).

In *Lototsky,* a district court, unguided by Pennsylvania law, held that the policies underlying the Code mandate that guarantors, as well as primary obligors, are "debtors." 549 F.Supp. 996 at 1003. The court also stated that it could perceive no difference between "guarantors" and "sureties" and in dicta held that both were entitled to the same protection. *Id.* at 998 n. 4.

Fortunately, we do not need to decide whether the appellants in fact are "debtors" under the Code to resolve the issues presented by this appeal. Instead, we will merely assume that they are debtors and concentrate our attention to their alleged rights under the Code.

8. Although a debtor may not waive his rights, "the parties may by agreement determine the standards by which fulfillment of these rights and duties is to be measured if such standards are not manifestly unreasonable...." 13 Pa. Cons.Stat.Ann. § 9501(c).

The statutory prohibition upon waivers apparently codifies the "longstanding and deeply rooted attitude" that "the specified rights of the debtor and the duties of the secured party may not be waived or varied...." *Id.* Official Comment. This attitude has grown from the premise that "[i]n the area of rights after default our legal system has traditionally looked with suspicion on agreements designed to cut down the debtor's rights and free the secured party of his duties...." *Id.; see also generally Ford Motor Credit Co. v. Lototsky,* 549 F.Supp. 996 (E.D.Pa.

pose of the collateral. Therein lies the problem.

Lichterman and Kessler assume that a secured party is required to dispose of any collateral in a commercially reasonable manner, *i.e.*, USX cannot hold the collateral until such time as it decides to dispose of it and recoup its losses. However, the Pennsylvania Code only states that "[a] secured party after default *may ...* dispose of *any or all* of the collateral...." 13 Pa.Cons. Stat.Ann. § 9504(a) (emphasis added). This language indicates that, absent an explicit duty in the security agreement, a secured creditor is never required to dispose of the collateral.

Our reading of the Pennsylvania Commercial Code is supported by section 9505 of the Code which deals with the compulsory disposition of collateral, but which is confined only to dispositions of consumer goods under certain circumstances. *Id.* § 9505. Furthermore, the official comment to section 9506 states, "Except in the case stated in Section 9–505(1) (consumer goods) the secured party is not required to dispose of collateral within any stated period of time." Consequently, the appellants' waiver arguments, largely based upon the *Lototsky* court's holding, are misplaced. We therefore conclude that the district court correctly entered summary judgment in favor of USX.[9]

## III. CONCLUSION

The record clearly establishes that no material factual dispute existed to preclude a grant of summary judgment by the district court. Because the appellants' obligations were clearly defined in this case, the district court had no reason to go beyond the clear and unambiguous language and intent of the relevant documents to determine the appellants' liability. These documents established that Lichterman and

Kessler were absolutely liable for the debts owed by Titan to USX.

We also hold that Lichterman and Kessler had no right to have USX dispose of the collateral seized after Titan defaulted. If USX had attempted to dispose of the collateral and had failed to do so in a commercially reasonable manner, then perhaps the appellants could argue that an issue of fact exists concerning whether the actions taken were reasonable or unreasonable under the circumstances. However, we are not presented with such a case and conclude that, because the appellants failed to negotiate the right to have USX dispose of the collateral immediately, the district court correctly entered summary judgment in favor of USX.

The district court's decision therefore is AFFIRMED.

---

1982) (characterizing a guarantor's waiver of his rights upon default as invalid under section 9501).

**9.** Lichterman and Kessler cannot make any argument that under the security agreement they had a right to have USX dispose of the collateral immediately. Judge Hart correctly concluded that the appellants clearly intended to waive "any right to demand that the security be ... protected on a commercially reasonable basis."

Once again, Paragraph 4 of the Direct Loan Obligations states:

> The undersigned waives any right to require Lender to: (a) proceed against Borrower; (b) proceed against or exhaust any security held from Borrower; (c) pursue any other remedy in Lender's power whatsoever;....

Thus, summary judgment in favor of USX on the "disposition of collateral" issue was appropriate.