766 F.2d 850
 82 A.L.R.Fed. 425, 13 Collier Bankr.Cas.2d 174,
Bankr. L. Rep. P 70,632
 MERRITT COMMERCIAL SAVINGS & LOAN, INC., Appellant,
v.
John W. GUINEE, Jr., Trustee; Board of Supervisors of
Fairfax County, Virginia, Appellees.
In re JAMES R. CORBITT, CO., Debtor.
 No. 84-2006.
 United States Court of Appeals,
Fourth Circuit.
 Argued April 3, 1985.
Decided July 2, 1985.
Rehearing Denied July 30, 1985.
 
 Mark A. Moorstein, Fairfax, Va. (Robert B. Baumgartner, Richmond, Va., on brief), for appellant.
 Lawrence W. Phelps, Asst. County Atty., Fairfax, Va. (David T. Stitt, Fairfax, Va., on brief), for appellees.
 Before WINTER, Chief Judge, and RUSSELL and MURNAGHAN, Circuit Judges.
 DONALD RUSSELL, Circuit Judge:
 
 
 1
 This is a bankruptcy case in which appellant Merritt Commercial Savings and Loan, Inc. (Merritt) challenges the decisions of both the district court and the bankruptcy court denying its motion to intervene as of right, pursuant to Fed.R.Civ.P. 24(a)(2), to challenge a proposed compromise and settlement agreement entered into between the trustee in bankruptcy and one of the debtor's creditors, the Board of Supervisors of Fairfax County, Virginia (County). We find that Merritt has an "interest" in the compromise agreement, that approval of the compromise agreement would impair Merritt's ability to protect that interest, and that Merritt's interest is not adequately represented by the existing parties. Accordingly, we find that Merritt is entitled to intervene as a matter of right.
 
 
 2
 * The debtor, James R. Corbitt Co., was engaged in the business of developing and building residential subdivisions, many of which are located in Fairfax County, Virginia. Between April, 1978 and April, 1980, and pursuant to a valid ordinance enacted by the county, the debtor entered into twenty-seven conservation escrow agreements with the County as a condition to County approval of the debtor's development plans for residential lots located throughout the County. Under the escrow agreements, the debtor was required to deposit an "escrow amount" for each lot the debtor planned to develop within the County to secure compliance with all conditions of the conservation provisions of the ordinances adopted by the County. When the debtor filed its voluntary Chapter 11[1] reorganization petition on March 19, 1981, the county held $40,850 in the debtor's escrowed funds, subject to refund to the debtor. The escrowed funds are the crux of this appeal.
 
 
 3
 In addition to the developments covered by the escrow agreements, the debtor engaged in the development of the Reston Section 24A residential subdivision (Reston 24A). In connection with that development, the debtor agreed to make street and other improvements at his expense. No funds were escrowed, in connection with Reston 24A, but the debtor posted a performance bond in favor of the County with Merritt as surety thereon. On February 19, 1981, after the debtor defaulted in its obligation to provide the requisite improvements for Reston 24A, the County filed suit in the Circuit Court of Fairfax County against the debtor and Merritt. On September 27, 1982, judgment in the amount of $68,433.30 was entered against the debtor and Merritt. That judgment has now become final. Merritt, however, has not paid any part of that judgment.
 
 
 4
 In the debtor's bankruptcy proceeding, the County filed a proof of claim asserting damages in connection with both the conservation escrow agreements ($17,045.55) and with the debtor's default on the Reston 24A project ($68,433.30). Merritt also filed a contingent proof of claim in the bankruptcy proceedings for the amount of the judgment rendered against it on the Reston 24A performance bond ($68,433.30).
 
 
 5
 On October 5, 1982, the trustee, John W. Guinee, Jr., filed an adversary complaint against the County seeking turnover of property of the estate[2] held by the County--the $40,850 in the debtor's escrowed funds.[3] In response to the trustee's complaint, the County asserted a right of setoff under section 553(a) of the Bankruptcy Code, 11 U.S.C. Sec. 553(a), which entitled it to retain the escrowed funds in partial satisfaction of the County's claims against the debtor of $85,478.85, representing the sum of the County's judgment against the debtor and Merritt and its admitted claim for damages arising from the debtor's breach of the conservation escrow agreements. Shortly thereafter, the trustee applied for and received leave from the bankruptcy court to compromise the estate's turnover claim against the County. The trustee and the County reached a tentative agreement, subject to bankruptcy court approval, under which the County was to retain $7,500 of the escrowed funds and was to return the remaining $33,350 to the debtor's estate. The agreement did not take into account any interest earned by the escrowed funds while in the County's possession.
 
 
 6
 All creditors were mailed a notice of the trustee's intent to compromise the turnover claim. Merritt received such notice and promptly filed a motion both to intervene and to enjoin the enforcement of the compromise agreement. Merritt by its motion sought to assert objections to the proposed compromise agreement which purportedly adversely affected Merritt. In short, Merritt contended that its liability to the County as surety on the Reston 24A performance bond should be reduced dollar-for-dollar by the sum of the escrowed funds held by the County and the interest earned by the funds. The bankruptcy court held a hearing on Merritt's motions on January 31, 1984, and it thereafter denied Merritt's motions and approved the compromise agreement.
 
 
 7
 On appeal, the district court upheld the bankruptcy court's decision denying Merritt's motion to intervene as of right and approving the compromise agreement. The district court first held that Merritt had no right to intervene on the basis of section 106(b) of the Bankruptcy Code, 11 U.S.C. Sec. 106(b), since Merritt could not compel the debtor to assert its counterclaim (for the amount of the escrowed funds) against the County. The district court also held that the bankruptcy court had not abused its discretion in approving the compromise agreement.
 
 II
 
 8
 The right of Merritt to intervene depends on the authority granted by Fed.R.Civ.P. 24, which provides:
 
 
 9
 (a) Intervention of Right. Upon timely application anyone shall be permitted to intervene in an action: ... (2) when the applicant claims an interest relating to the property or transaction which is the subject of the action and he is so situated that the disposition of the action may as a practical matter impair or impede his ability to protect that interest, unless the applicant's interest is adequately represented by existing parties.
 
 
 10
 In construing this Rule, "the moving party must show that (1) it has an interest in the subject matter of the action, (2) disposition of the action may practically impair or impede the movant's ability to protect that interest, and (3) that interest is not adequately represented by the existing parties." Newport News Shipbuilding and Drydock Co. v. Peninsula Shipbuilder's Association, 646 F.2d 117, 120 (4th Cir.1981). See also 7A C. Wright & A. Miller, Federal Practice and Procedure Sec. 1908, p. 495 (1972). To intervene as a matter of right, therefore, Merritt must first demonstrate that it has an "interest" in the turnover proceeding initiated and subsequently compromised by the trustee.
 
 
 11
 Merritt identifies its interest as the right to reduce its liability to the County by requiring the County to assert its setoff right against the debtor, thereby reducing dollar-for-dollar Merritt's liability to the County. Otherwise, were the escrowed funds returned to the estate as the compromise agreement provides, Merritt would be liable to the County for $68,433.30, the total liability of the debtor and Merritt on the Reston 24A performance bond, and in return Merritt, as an unsecured creditor, would recover only a fraction of that amount from the debtor's assets upon liquidation of the debtor's estate.
 
 
 12
 Merritt finds in section 106(b) of the Bankruptcy Code support for its contention that it can compel the County, as a creditor of the debtor, to assert its right of setoff and thus to reduce Merritt's liability to the County. Section 106(b) provides:
 
 
 13
 There shall be offset against an allowed claim or interest of a governmental unit any claim against such governmental unit that is property of the estate.[4]
 
 
 14
 Section 106(b) provides that the county's setoff claim "shall be offset." Both the bankruptcy court and the district court, however, held that Merritt's reliance on section 106(b) is misplaced. The legislative history reveals that section 106 of the Bankruptcy Code, which is titled "Waiver of Sovereign Immunity", was simply intended to prevent a governmental unit from receiving a "distribution from the estate without subjecting itself to any liability it has to the estate" by asserting the defense of sovereign immunity. S.Rep. No. 95-989, 95th Cong., 2d Sess. 29 (1978); H.R.Rep. No. 95-595, 95th Cong., 1st Sess. 317 (1977), U.S.Code Cong. & Admin.News pp. 5787, 5815, 6275. Accordingly, Congress provided that if a governmental unit files a proof of claim in the bankruptcy proceeding,
 
 
 15
 the estate may offset against the allowed claim of a governmental unit, up to the amount of the governmental unit's claim, any claim that the debtor, and thus the estate, has against the governmental unit, without regard to whether the estate's claim arose out of the same transaction or occurrence as the government's claim.
 
 
 16
 S.Rep. No. 95-989, at 29-30; H.R.Rep. No. 95-595, at 317 (emphasis added), U.S.Code Cong. & Admin.News pp. 5787, 5815, 6275. See also In Re O.P.M. Leasing Services, Inc., 21 B.R. 993, 1001-1002 (Bankr.S.D.N.Y.1982). Section 106 thus empowers the debtor, not the governmental unit or a third party, to assert a setoff claim and thereby pierce the governmental unit's sovereign immunity whenever the governmental unit files a proof of claim in the debtor's bankruptcy proceeding. As the district court recognized, Merritt cannot compel the debtor to assert a permissive setoff claim the debtor has chosen to relinquish. Section 106, therefore, fails to provide Merritt with an "interest" in the bankruptcy proceedings sufficient to allow Merritt to intervene as a matter of right.
 
 
 17
 That section 106(b) fails to supply Merritt with an "interest" in this bankruptcy proceeding does not end our inquiry. In In Re Yale Express System, Inc., 362 F.2d 111 (2d Cir.1966), numerous creditors of the debtor, an insolvent motor carrier, held claims against the debtor for loss or damage to cargo entrusted to the debtor. The surety sought to reduce its liability to the creditors by the amount of freight charges owed by the creditors to the debtor. In short, the surety sought to set off the unpaid freight charges against the creditors' cargo claims. Judge Friendly, writing for the court, recognized that a surety of a solvent principal cannot ordinarily compel a creditor to assert a setoff right that would exonerate, or reduce the liability of, the surety. Id. at 114. Judge Friendly, however, noted that a different rule obtains when the principal is insolvent:
 
 
 18
 But when the principal is insolvent, the surety may set off the principal's claim, [citations omitted] or obtain a decree requiring the creditor and the principal to adjust their controversies, remaining liable to the creditor only for the amount not covered by the principal's claim against him.
 
 
 19
 Id. at 114-115 (emphasis added). Judge Friendly then quoted at length from United States ex rel. Johnson v. Morley Construction Co., 98 F.2d 781, 790 (2d Cir.), cert. denied sub nom., Maryland Casualty Co. v. United States ex rel. Harrington, 305 U.S. 651, 59 S.Ct. 244, 83 L.Ed. 421 (1938), in which Judge Learned Hand recognized that:
 
 
 20
 Thus, the upshot of denying the surety a right to assert the counterclaim is to enhance the principal's estate at the expense of the surety, which is contrary to the fundamental relation between the two. The truth is that after insolvency the counterclaim becomes the creditor's security for his own claim, a means by which it can be paid dollar for dollar through his right of set-off. However, it is only after the surety pays the creditor that he is subrogated to all the creditor's securities, and that would be a condition here, except that the surety cannot pay the debt without losing the security, for it consists only of the creditor's power to defeat the counterclaim by using his claim to cancel it. Therefore to exact of the surety the normal condition of paying the debt, would be to destroy the security, and it follows that he must be allowed to set it up himself. 362 F.2d at 115.
 
 
 21
 Judge Friendly next addressed whether the surety could assert his equitable right to compel the creditor to exercise his right of setoff in a proceeding under section 68 of the Bankruptcy Act, former 11 U.S.C. Sec. 108 (1976). Section 68 allowed the setoff of only "mutual" debts and credits, and the surety "was endeavoring to set off [the debtor's] claims against the shippers against the shippers' claims against [the surety]." Id. Judge Friendly dismissed the apparent lack of mutuality of the claims by stating that the "argument, however, overlooks the surety relationship and fails to recognize that the debts owed by [the surety] under the endorsement are really those for which [the debtor] is principally liable." Id. Accordingly, Judge Friendly held that the "equitable right of the surety may be viewed ... as one to have the creditor required to do what his self-interest would lead him to do but for the existence of the surety"--set off his claim against the debtor and thereby reduce the liability of both the debtor and the surety to the creditor. Id. A surety thus has an equitable right to compel the creditor to assert his right of setoff thus preventing the "unjust enrichment [of the debtor's estate] at the expense of the surety." In Re Eastern Freight Ways, Inc., 577 F.2d 175, 180 (2d Cir.1978). See also Clark Car Co. v. Clark, 48 F.2d 169, 170 (3d Cir.1931); Continental Group, Inc. v. Justice, 536 F.Supp. 658, 661 (D.Del.1982) ("it is well established that when the principal is insolvent, the guarantor may set-off the principal's claims against the creditor"); Ford Motor Credit Co. v. Lototsky, 549 F.Supp. 996, 1004 (E.D.Pa.1982).
 
 
 22
 Applying the reasoning of Yale Express to the case sub judice, it is evident that as a surety Merritt has a right to compel the County to assert its setoff right against the insolvent debtor. Merritt's right to benefit from the County's setoff right, that is, to reduce its liability to the County by the amount of the County's setoff right against the estate exceeding $17,045.55,[5] certainly demonstrates that Merritt has an "interest" in the turnover proceeding brought and subsequently compromised by the trustee.
 
 
 23
 We next consider whether, absent intervention, Merritt's ability to protect its interest may be impaired or impeded by the proposed disposition of the action and whether Merritt's interest was adequately represented by the existing parties, the trustee and the County. It is abundantly clear that Merritt's interest will be impaired if it is not allowed to intervene, because once the proposed compromise agreement takes effect, the County will relinquish $33,350 of the escrowed funds, thereby reducing the County's setoff right and Merritt's corresponding right to benefit from the County's setoff right. See United States ex rel. Johnson v. Morley Construction Co., 98 F.2d at 790. Furthermore, it is apparent that neither the trustee nor the County adequately represented Merritt's interest, because the trustee has attempted to defeat the County's setoff right in order to swell the estate, and the County has agreed to relinquish to the debtor over 80% of the escrowed funds, perhaps to avoid any liability for interest that has accrued on the escrowed funds while in the County's possession. Accordingly, we hold that Merritt has satisfied the criteria set forth in Fed.R.Civ.P. 24(a)(2) and is thus entitled to intervene as a matter of right.
 
 
 24
 Finding that the bankruptcy court erred by denying Merritt's motion to intervene in the turnover proceedings and that the district court erred by affirming the denial of intervention, we vacate the denial of intervention. Since by denying intervention the bankruptcy court also denied Merritt, who we find entitled to intervene as a matter of right, the opportunity to present its objections to the proposed compromise agreement, we also vacate the bankruptcy court's decision, which was affirmed by the district court, approving the proposed compromise agreement.
 
 
 25
 Accordingly, the judgment of the district court is reversed and vacated and we remand for proceedings not inconsistent with this opinion.
 
 
 26
 REVERSED AND VACATED AND REMANDED.
 
 
 
 [1]
 The bankruptcy court later converted the debtor's Chapter 11 case to a Chapter 7 liquidation proceeding, pursuant to 11 U.S.C. Sec. 1112 (1983)
 
 
 [2]
 The turnover proceeding is authorized by 11 U.S.C. Sec. 542(a)
 
 
 [3]
 Contrary to the terms of the conservation escrow agreements, the escrowed funds were apparently maintained in the county's general fund rather than in a separate account. Brief of Appellee John W. Guinee, Jr., at 6 n. *
 
 
 [4]
 11 U.S.C. Sec. 106(b)
 
 
 [5]
 Merritt will benefit from the County's right to setoff only by that amount exceeding $17,045.55, which represents the County's claim for damages directly related to the debtor's breach of the conservation escrow agreements. The escrowed funds which are the subject of the County's setoff right are to be applied first to the County's claim that is directly related to the funds and then to the County's remaining claim, the claim on which Merritt is liable